IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), <br>    2600 South Loop Freeway West, #270 <br>    Houston, TX  77054 <br><br> JOSEPH W. DOUGLAS, <br>    3102 Hillcrest, Apt. 8C <br>    San Antonio, TX  78201 <br><br> DORIS MITCHELL, <br>    1137 Gunter St., Bldg. 2, Apt. 264 <br>    Austin, TX  78721 <br><br> KENNETH LEACH, <br>    7607 Blessing, Apt 1113 <br>    Austin, TX  78752 and <br><br> LATONYA MONIQUE BURTON, <br>    1707 Parkside Circle <br>    Round Rock, TX  78664 <br><br>                    Plaintiffs, <br><br> vs. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA), <br>    500 C Street, SW <br>    Washington, DC  20472 <br><br>                    Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> §      CIVIL ACTION NO. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.  INTRODUCTION**

1.     Federal law provides evacuees from Hurricanes Katrina and Rita with up to 18 months of housing assistance.  FEMA now claims that tens of thousands of evacuees no longer qualify for housing assistance.  But FEMA does not use any form of the words "denied" or "terminated" in

its correspondence to these evacuees, nor does FEMA say exactly why it is denying assistance. Instead, FEMA mails a letter to each such evacuee stating that it will contribute "$0.00" to assist the evacuee with further housing needs. Each letter contains a cryptic computer code or generic phrase to explain the reason for termination of housing benefits. *See* Exhibit 1. The letters do not explain what steps, if any, the evacuees may take to correct any errors that produced FEMA's termination of benefits. FEMA's refusal to clearly state its decision, the basis for its decision, and the available means of challenging its decision will result in the termination of FEMA assistance for many evacuees not because they are ineligible (because many of them are eligible), but because they are uncertain of what the problem is and how to correct it.

2.      Whether by neglect or a deliberate attempt to withhold benefits, FEMA's actions run headlong into a half-century of case law holding that the Constitution requires agencies to provide "timely and adequate notice detailing the reasons for a proposed termination" of government benefits, *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970), and that "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the [evacuee] might reasonably adopt to accomplish it." *Jones v. Flowers*, 126 S.Ct. 1708, 1715 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

3.      Plaintiffs seek preliminary and permanent injunctive relief to ensure that all housing assistance termination notices contain a complete and intelligible explanation for the termination and adequate instructions so that each beneficiary may attempt to address any concerns with the proposed termination. Plaintiffs also seek a declaration that FEMA has violated the Due Process Clause and an order continuing current assistance to Katrina and Rita evacuees until FEMA provides sufficient notice and opportunity for hearing in response to any proposed termination of benefits.

## II.  PARTIES

4.      Plaintiff Association of Community Organizations for Reform Now (ACORN) is a membership organization that describes itself as "the nation's largest community organization of low- and moderate-income families."  ACORN works in more than 75 cities across the United States to improve housing conditions for the economically disadvantaged, increase community safety, secure living wages for all workers and improve the quality of local schools.  *See* www.acorn.org.  ACORN's mission and purpose is to advocate for fair government treatment of its members, including protecting their rights to housing benefits.  Over 5,000 ACORN members are evacuees of Hurricanes Katrina and Rita.  ACORN operates the ACORN Katrina Survivor's Association.   Numerous hurricane evacuees who are ACORN members have applied for housing assistance from FEMA and received termination letters that fail to comply with the requirements of due process, as alleged in this lawsuit.  ACORN itself is also injured by the notice practices challenged in this lawsuit because ACORN has spent, and will continue to spend, its limited resources to help evacuees overcome the notice barriers placed before them by FEMA unless the relief sought in this lawsuit is granted.  FEMA's challenged actions have caused ACORN to redirect its resources from its other projects to assist evacuees, assistance that would have been unnecessary had FEMA followed the law in the first place.

5.      The individual Plaintiffs are survivors of Hurricanes Katrina who have been evacuated from their permanent places of residence and now reside in Texas, who need housing, and who have been notified by FEMA that their housing assistance benefits have been or will be terminated without being provided an adequate notice of the reasons for the termination.

6.      Defendant Federal Emergency Management Agency (FEMA) is an agency of the United States Department of Homeland Security, a cabinet department of the United States

Government. FEMA is the agency that Congress has charged with providing disaster relief to hurricane evacuees, including housing rental assistance payments.

### III. JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

### IV. VENUE

8. Venue is proper in this Court pursuant 28 U.S.C. § 1391(e) because Defendant resides in this district, and all or a substantial part of the events or omissions giving rise to the claim occurred in this district.

### V. FACTS

9. Following Hurricanes Katrina and Rita in August and September 2005, evacuees who were displaced from their pre-disaster primary residence or whose pre-disaster primary residence was rendered uninhabitable as a result of damage, were deemed eligible for "essential assistance" under Section 403 of the Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5170b, and were provided this assistance.

10. The Section 403 "essential assistance" made available to evacuees included housing rental assistance that FEMA has paid to local governments. Local governments use this money to pay rents directly to landlords who house evacuees.

11. In February 2006, FEMA began transitioning its housing rental assistance payments from the emergency housing provisions of Section 403 of the Stafford Act to the longer-term housing provisions of Section 408. Section 408 contains stricter eligibility standards, a cap on the total amount of payments, and a maximum duration of 18 months. 42 U.S.C. § 5174; 44 C.F.R. Part 206.

12. FEMA's decision to transition from Section 403 to Section 408 required it to determine whether each family of evacuees was eligible for continued housing rental assistance under Section 408 and to make this determination before ending Section 403 housing rental assistance.

13. FEMA's own interpretation of its governing regulations and FEMA policy is that although FEMA may have discretion as to what kind of housing assistance to provide in any case (i.e. direct cash payment, subsidized hotel, or temporary shelter), once an applicant is deemed eligible for assistance, some form of housing assistance shall be provided while eligible.

14. On February 22, 2006, FEMA sent a letter to local governments stating that it intended, "on March 1, 2006, to transition all eligible evacuees from the Section 403 Interim Sheltering Program to the Section 408 Housing Program." *See* Exhibit 2. This transition required local governments to provide FEMA with a list of all evacuees for whom they were administering Section 403 assistance. FEMA then began to review each individual file to determine whether the evacuee was eligible for Section 408 assistance.

15. FEMA may have begun the transition on February 22, 2006, but it was not close to concluding the transition by March 1, 2006. Accordingly, FEMA has issued several Section 403 housing assistance extensions of varying duration and scope, and it has acknowledged that increased efforts are needed to ensure that valid eligibility decisions are made as the transition is completed. *See* e.g., Exhibits 3 and 4 (extending Section 403 assistance until March 31, 2006 and then extending it again until August 31, 2006).

16. FEMA's housing assistance termination letters, as reproduced in Exhibit 1, are generated by a computer program that merges each evacuee's name and address into a form letter, and also merges into each letter computer codes and cryptic phrases that reflect FEMA's reason for terminating housing benefits.

17.     The computer codes and phrases that FEMA uses in its termination letters are vague and are not consistently understood or applied, even by FEMA employees.

18.     Some phrases are misleading, even to the point of indicating that evacuees are eligible for benefits when the phrase and code really mean that the evacuee is not eligible for benefits.

19.     No cost or technological reason explains why FEMA does not include a statement of the actual reason for termination in each letter rather than a computer code or phrase.

20.     FEMA's letters refer evacuees to "HELP AFTER A DISASTER," FEMA's Applicant's Guide, and states that the Guide provides "a more detailed explanation of this decision." *See* Exhibit 1.  Even if an evacuee can obtain the Applicant's Guide, however, it does not provide sufficient notice.  The Applicant's Guide contains only short generic descriptions corresponding to the computer codes in the letters.   These descriptions also fail to provide evacuees with adequate reasons for the termination of benefits or instructions for how to proceed.

21.     In addition to providing inadequate notice of the reasons for its termination decisions, FEMA's termination letters fail to provide sufficient information about what steps, if any, the evacuees can take to correct any deficiencies in their applications and receive benefits to which they are entitled.

22.     FEMA's deficient termination notices, as described above, injure hurricane evacuees, including Plaintiffs, by delaying or denying them housing benefits to which they are entitled.

23.     The delay or denial of housing benefits referenced in the preceding paragraph occurs because FEMA's challenged actions:

    (a) deter evacuees from challenging erroneous disqualification decisions;

    (b) introduce unnecessary confusion and delay into challenges that are made to FEMA's disqualification decisions, rendering appeals more costly to hurricane victims; and

(c) enable FEMA to alter or amend the reasons that it relies upon to justify its termination decisions after those decisions were originally made.

24. On August 31, 2006, thousands of families will lose federal housing assistance and be subject to eviction under state law unless FEMA's illegal housing assistance termination procedures are corrected. *See* Exhibit 4 (extending Section 403 assistance until August 31).

25. FEMA has declined to improve the specificity of the notice that it provides in its termination letters.

26. Included among the families whose housing assistance is in jeopardy are the five individual Plaintiffs in this case.

27. Plaintiff Joseph Douglas is a former caretaker and is desperate need of rental assistance.

28. Joseph Douglas received a letter from FEMA dated March 24, 2006 that stated:

| CATEGORIES | DETERMINATION |
|---|---|
| Rental Assistance | IIO- Ineligible - Other |
| =============== | =========== |
| Total Grant Amount: | $0.00 |

29. After he appealed, FEMA sent him a letter dated May 25, 2006 stating:

| CATEGORIES | DETERMINATION |
|---|---|
| Rental Assistance | INC- Ineligible - No change on appeal, original ineligible status stands |
| =============== | =========== |
| Total Grant Amount: | $0.00 |

30. On June 16, 2006, Mr. Douglas received two letters from FEMA—both saying he was eligible, but FEMA awarded no assistance:

| CATEGORIES | DETERMINATION |
|---|---|
| Rental Assistance | ENC- Eligible - No change on appeal, original eligible status stands |
| =============== | =========== |
| Total Grant Amount: | $0.00 |

31. After another appeal, Mr. Douglas received a letter from FEMA dated August 10, 2006 stating:

| CATEGORIES | DETERMINATION |
|---|---|
| Rental Assistance | ENC- Eligible - No change on appeal, original eligible status stands |
| ================ | ============ |
| Total Grant Amount: | $0.00 |

32. Mr. Douglas was a live-in caretaker in New Orleans before the hurricane. After the disaster he moved to San Antonio, Texas. He was receiving FEMA's temporary rental assistance through the city of San Antonio, but his rental assistance was terminated by FEMA. He desperately needs rental assistance.

33. After numerous attempts to determine the reason for the termination, he was told that the person he was taking care of in New Orleans applied for FEMA assistance as well, and two persons from the same pre-disaster household cannot receive assistance. Mr. Douglas does not live with the person he was taking care of any longer, and does not know what to do to address the problem.

34. Plaintiff Doris Mitchell is 62 years old and struggling to support a foster child.

35. Ms. Mitchell received a letter from FEMA dated January 9, 2006 stating:

| CATEGORIES | DETERMINATION |
|---|---|
| Housing Assistance | W69D - Withdrawn - Signature not Obtained (90-69D) |
| Personal Property | W69D - Withdrawn - Signature not Obtained (90-69D) |
| ================ | ============ |
| Total Grant Amount: | $0.00 |

36. When Ms. Mitchell contacted FEMA she was told she had "voluntarily withdrawn" her application for rental assistance.

37. Ms. Mitchell never withdrew her application.

38. Ms. Mitchell then sent an appeal to FEMA dated May 16, 2006.

39. Ms. Mitchell received another letter from FEMA dated June 6, 2006 stating:

    | CATEGORIES | DETERMINATION |
    |---|---|
    | Personal Property | IID- Ineligible - Insufficient Damage |
    | Total Grant Amount: | $0.00 |

40. Ms. Mitchell is at a loss what to do to obtain rental assistance. She is not sure whether the letter from June 6, 2006 disposed of her appeal for rental assistance or not.

41. Plaintiff Kenneth Leach is disabled and on a fixed income.

42. Mr. Leach received a letter from FEMA dated February 27, 2006 stating:

    | CATEGORIES | DETERMINATION |
    |---|---|
    | Personal Property | IID- Ineligible - Insufficient Damage |
    | Total Grant Amount: | $0.00 |

43. Mr. Leach received another letter from FEMA dated March 30, 2006 stating:

    | CATEGORIES | DETERMINATION |
    |---|---|
    | Dental | INSS - Ineligible - No substantiation submitted |
    | Medical | INSS - Ineligible - No substantiation submitted |
    | Total Grant Amount: | $0.00 |

44. Mr. Leach was later told by FEMA on the phone that he was denied rental assistance because his income (from social security) had actually increased on relocation (up $24 a month) and his rent is $100 less in Austin than it was in New Orleans.

45. However, Mr. Leach's rent in New Orleans included utility service, and his housing expenses actually increased after he was moved to Austin. Mr. Leach appealed.

46. On May 18, 2006, FEMA granted his requested for rental assistance ($1,350.00 for three months).

47. On August 1, 2006, FEMA denied has personal property request again, but also sent him another letter stating:

9

| CATEGORIES | DETERMINATION |
|---|---|
| Rental Assistance | INO - Ineligible - Other |
| ================ | ============ |
| Total Grant Amount: | $0.00 |

Ineligible Other Reason: WE NEED YOU TO SUBMIT RENT RECEIPTS FOR JUNE AND JULY

48.  Mr. Leach complied with FEMA's request and confirmed by telephone that FEMA received the receipts. However, FEMA indicated in that phone call that his request for rental assistance is still denied because of an "inspection" problem. The FEMA representative explained that they have not had complete access to Mr. Leach's pre-disaster address to confirm the damage. Mr. Leach does not know how to demonstrate his continuing eligibility to FEMA and has not received anything in writing about FEMA's latest justification for the denial of assistance.

49.  Plaintiff Latonya Monique Burton received a letter dated March 13, 2006 from FEMA stating:

| CATEGORIES | DETERMINATION |
|---|---|
| Personal Property | INC - Ineligible - No change on appeal, original ineligible status stands |
| ============= | ============ |
| Total Grant Amount: | $0.00 |

50.  Ms. Burton received another letter dated March 28, 2006 from FEMA stating:

| CATEGORIES | DETERMINATION |
|---|---|
| Rental Assistance | INO - Ineligible - Other |
| ============== | ============ |
| Total Grant Amount: | $0.00 |

Ineligible Other Reason: The condition of your home was not caused or aggravated by the disaster; or the damage to your home caused by the disaster has not affected your ability to continue living in your home.

51.     Ms. Burton appealed this decision in writing, only to receive another denial letter dated June 2, 2006.

52.     A FEMA operator later explained that rental assistance was denied because an inspection had determined that Ms. Burton's pre-disaster residence was safe to live in.

53.     Ms. Burton questions the relevance of this inspection because she was renting in New Orleans, she was evacuated because of Katrina, and until she finds a higher-paying job—Ms. Burton now works 30-40 hours a week as a security guard in Austin, Texas, making $9 an hour—she lacks the means to pay her rent or return to New Orleans, especially now that rents there have increased.

## VI.  FIRST CAUSE OF ACTION
### (DUE PROCESS CLAUSE)

54.     Plaintiffs bring this case under the Due Process Clause of the Fifth Amendment to the Constitution.

55.     The individual Plaintiffs, Plaintiff ACORN's members who are hurricane evacuees, and hurricane evacuees who approach ACORN for assistance, all hold a property interest in FEMA housing assistance that is constitutionally protected under the Fifth Amendment's Due Process Clause.

56.     FEMA's housing assistance termination notices, as described above and attached as Exhibit 1, do not provide evacuees, including Plaintiffs, with constitutionally sufficient notice of the fact that assistance will be terminated, the reasons for termination, how the termination decision was made, how any termination decision may be appealed and decided, and what steps, if any, the evacuees may take to correct any errors that produced FEMA's termination of benefits.

## VII. SECOND CAUSE OF ACTION
## (ADMINISTRATIVE PROCEDURE ACT)

57.     Plaintiffs bring this case under the Administrative Procedure Act (APA).

58.     The APA provides that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right." 5 U.S.C. § 706(2)(B). As described above, FEMA's housing assistance termination procedures violate the Constitution.

59.     FEMA's preparation and publication of its housing assistance termination letters, examples of which are described above and attached as Exhibit 1, constitute agency actions, findings, and conclusions that are reviewable under the APA.

60.     FEMA's actions in issuing the termination letters as described above are arbitrary and capricious, an abuse of discretion, and/or contrary to law under 5 U.S.C. § 706(2)(A), and proximately caused injury to the individual Plaintiffs, including the organizational Plaintiffs' members, and to the organizational Plaintiff itself.

## VIII.  PRAYER

61.     Plaintiffs seek all preliminary and permanent equitable and declaratory relief necessary to prevent FEMA from denying benefits to hurricane victims without due process of law. Without this relief, Plaintiffs are prevented from obtaining benefits to which they are legally entitled and will face eviction from their housing and other irreparable harm. This harm is not outweighed by any legitimate FEMA interest in encoding its reasons for terminating housing benefits, and a clear statement of the reasons is in the public interest. Plaintiffs also request that Section 403 and 408 assistance that is currently being provided to hurricane victims not be terminated before each recipient is provided a written statement that specifies the actual reason for the termination

of benefits, provides adequate instructions for correcting any deficiencies, and allows sufficient time for appeal.

62.     Due to the urgency of the matters raised by this complaint—including the threat of mass evictions after August 31, 2006—Plaintiffs seek the most prompt possible means of identifying whether any disputed issues of fact exist and what legal arguments the Court may need to decide. Accordingly, Plaintiffs will promptly file the appropriate motions and other supporting documents seeking preliminary relief.  A prompt hearing cannot prejudice FEMA, especially because FEMA was given notice and an opportunity to resolve this matter without litigation, and FEMA took no responsive action.

63.     WHEREFORE, Plaintiffs pray that the Court grant them the following relief:

    a.     a declaratory judgment that FEMA has violated the Due Process Clause by failing to fully state in writing its reasons for terminating housing benefits before terminating those benefits, by failing to describe what steps, if any, the evacuees may take to correct any errors that produced FEMA's termination of benefits, and by failing to notify beneficiaries of their right to appeal FEMA's termination decision;

    b.     a preliminary, and then a permanent injunction directing FEMA to— (i) deliver a written description of why FEMA proposes to terminate housing assistance to any evacuee from Hurricane Katrina or Rita before any such assistance is terminated, and do so in such detail as is necessary to permit a reasonable person to understand the complete basis for FEMA's action;

    (ii) deliver a written description of what an evacuee from Hurricane Katrina or Rita may do to challenge any FEMA proposal to terminate housing assistance, including how and when that challenge will be decided, and deliver this description before terminating any housing assistance to an evacuee; and

    (iii) follow all stated procedures for allowing a challenge to a termination before terminating housing assistance benefits to any evacuee who has begun to receive FEMA housing assistance;

c. award Plaintiffs, to the extent permitted by law, its costs and litigation expenses; and

d. award Plaintiffs all other relief as the Court deems just and proper.

            Respectfully submitted,

            _____
            Michael T. Kirkpatrick
              (DC Bar No. 486293)
              mkirkpatrick@citizen.org
            Deepak Gupta
              (DC Bar No. 495451)
              dgupta@citizen.org
            Brian Wolfman
              (DC Bar No. 427491)
              brian@citizen.org
            Public Citizen Litigation Group
            1600 20th Street, N.W.
            Washington, DC  20009
            (202) 588-1000
            (202) 588-7795 (fax)

                                        Robert W. Doggett
                                              (TX Bar No. 05945650)
                                              rdoggett@trla.org
                                      Jerome W. Wesevich
                                              (TX Bar No. 21193250)
                                              jwesevich@trla.org
                                      Texas RioGrande Legal Aid, Inc.
                                      4920 North Interstate Highway 35
                                      Austin, Texas  78751
                                      (512) 374-2725
                                      (512) 447-3940 (fax)

Dated: August 29, 2006                          Attorneys for Plaintiffs