IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), *et al.* §§§§<br><br>   Plaintiffs,   §<br>                              §<br>v.                           §<br>                              §<br>FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA), §§§§<br><br>   Defendant.   § | Civil Action No. 06-1521-RJL |

# Exhibit 7

To Plaintiffs' Motion for a Temporary Restraining Order

Declaration of Susanne Seré

1. My name is Susanne Seré. I am an attorney licensed to practice law in the State of Texas. My State Bar Number is 18032340. I also am licensed to practice law in the United States District Courts for the Southern District of Texas.

2. I am employed by Lone Star Legal Aid as the Attorney Manager for the Public Benefits and Special Projects Units, Houston office. As part of my duties with Lone Star Legal Aid, I supervised seminars designed to provide hurricane evacuees with assistance in the preparation of pro se letters to appeal FEMA's denial of eligibility for Section 408 housing assistance. We have assisted hundreds of evacuees from Hurricanes Katrina and Rita.

3. Based on discussions with the evacuees, it was clear that very few, if any, knew the criteria for Section 408 housing assistance eligibility. The overwhelming majority is completely confused by the circumstances, did not understand the reason(s) for the denials of housing assistance and did not know what information must be provided to establish eligibility. Many evacuees had entered into 12 month leases and did not know why their assistance and their leases are being terminated.

4. Many evacuees received several letters from FEMA. Some evacuees had a series of letters resulting in multiple reasons for denial. Evacuees had letters that were confusing and at times appeared to be contradictory. For example, one evacuee received a denial letter based on "insufficient damage"; approximately one month later she received another letter stating that the basis for denial is that "applicant withdrew voluntarily". At least one evacuee received a letter from FEMA stating that she was eligible for Section 408 assistance and then received a subsequent letter stating that she was ineligible.

5. Many evacuees received vague denial letters from FEMA. Some letters gave the reason for denial as "other" or "other reason". Some letters stated that FEMA was "sending this letter to help clarify the termination of FEMA's subsidy of your current rental unit" but gave no reason for the denial. Evacuees' attempts to obtain clarification from FEMA frequently resulted in further confusion.

6. One evacuee who had been denied on the basis that he had withdrawn his request for assistance called FEMA to discuss his denial. When he explained that he had not withdrawn his application, he was advised that the denial might be based on "insufficient damage" because he failed to meet the inspector at his pre-disaster residence.

7. Several evacuees believed the reason for their denials was because of a failure to meet with an inspector to assess damages to their pre-disaster residences. One evacuee was in the hospital at the time of the scheduled inspection and so notified FEMA. Another evacuee had met with an inspector to survey the damage but failed to meet with a second inspector when notified of the inspection at the time it was in progress over 100 miles away. Many evacuees simply were unable to travel the distance to return to their pre-disaster residences and were unaware that they could request a representative to act on their behalf.

8. Several evacuees that we have seen were denied on the basis that they are receiving other housing assistance, but the only housing assistance they are receiving is the Section 403 assistance that is being terminated. Another evacuee was advised by FEMA that she would need to obtain a statement from HUD indicating that she is not receiving housing assistance from HUD.

9. I have been with legal aid for over 27 years. After meeting with these evacuees and listening to their stories, I have to conclude that their plight with FEMA may be the most confusing and chaotic circumstances I have seen.

10. FEMA has scheduled the termination of the 403 program for the majority of evacuees in Houston for August 31, 2006 based on FEMA's position that a final determination regarding 408 eligibility has been made. It is my understanding that approximately 1800 evacuee households will continue to receive 403 rental assistance for the month of September because FEMA has not made a "final" determination regarding 408 eligibility. Because many of the evacuees have little income, they will undoubtedly face eviction when September rent is due.

11. In Texas, the eviction process is very short. A landlord first needs to give a three day notice to vacate (or one day if the lease allows). After the notice to vacate expires, the landlord can file the eviction case with the justice court. The justice court schedules an appearance within six to ten days. If the court rules for the landlord, the writ of possession can be issued after five days. However, once a tenant defaults, a landlord does not have to accept the rent and can instead choose to evict the tenant. In my experience, landlords that end up filing eviction cases usually do not want the rent, but instead require the tenant to vacate.

12. Unless FEMA is required to provide proper explanations of denials to evacuees and is required to continue the 403 program until they do, many evacuees that would otherwise be entitled to housing assistance will likely be evicted.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_Susanne C Sere_ Date: 8/30/2006
SUSANNE SERE