**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), *et al.* | § § § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 06-1521-RJL |
| | § | |
| v. | § | |
| | § | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA), | § § | |
| | § | |
| Defendant. | § | |

# Exhibit 9

To Plaintiffs' Motion for a Temporary Restraining Order

## AFFIDAVIT

1. My name is Martha Margaret Beard-Duncan. I have worked in the Austin Telephone Access to Justice ("TAJ") office of Texas RioGrande Legal Aid ("TRLA"), a nonprofit public interest law firm, since May 2006. I have been a licensed Texas attorney since May 2006.

2. As a member of TRLA's Disaster Relief team and an employee of the TAJ, I:
    a. Regularly interview prospective clients and help evaluate their legal claims;
    b. Focus primarily upon victims of Hurricane Katrina who were evacuated to Texas and live within TRLA's service area;
    c. Inform these clients about resources available to the indigent;
    d. Assist clients as they appeal adverse decisions by the Federal Emergency Management Agency ("FEMA").

3. I maintain an average caseload of twenty to thirty Katrina evacuees. Clients typically contact TRLA because they have been denied assistance under FEMA's Individuals and Households Program and do not understand why, or have unsuccessfully appealed these denials on their own.

4. Our clients routinely report that the written notices they receive from FEMA are vague and confusing.
    a. These clients report that FEMA agents on the Disaster Helpline, 1-800-621-FEMA, often fail to clarify the reasons why they have been denied assistance.
    b. Clients say that FEMA agents typically offer them inconsistent reasons why they were denied.

5. Our clients authorize TRLA's Disaster Team to advocate to FEMA on their behalf. They send us copies of their correspondence with FEMA: documents they have sent to FEMA, and documents they have received from FEMA.

6. After examining these documents, it is our practice to call the Disaster Hotline to attempt to determine (a) why a given client was denied assistance, as well as (b) what that client needs to do in order to more successfully appeal.

7. It is common for a FEMA agent to inform me of certain steps that a client needs to take to perfect his or her appeal; for example, submitting rental receipts or similar information. When I relay this information to the client, it is common for that client to inform me that they have already complied with these instructions, to the letter, without success.

8. We, like our clients, find that FEMA Disaster Helpline agents offer inconsistent reasons as to why clients might have been denied assistance.
    a. None of the reasons the helpline agents offer us verbally are given to us, or the clients, in writing.
    b. When we call the FEMA hotline and ask FEMA agents to evaluate clients' files, they seem to read from notes in these files that are not accessible to us or to the clients. Often, it is unclear whether the notes they are reading actually reflect the clients' current application status.

9. It is well established that the days following Hurricane Katrina and the evacuation of New Orleans were chaotic; some clients' files, as a result, contain erroneous information about the clients' pre-disaster addresses, or other identifying data such as Social Security numbers.

a. FEMA agents at evacuation centers may have mis-transcribed the data.
b. Such clients have repeatedly attempted to correct these mistakes to no avail; and TRLA, too, has attempted to rectify these errors on clients' behalf.
c. These errors interfere with our advocacy on behalf of our clients. FEMA will not share an evacuee's information if any of the identifying information we have fails to mesh with theirs—even when their information remains inaccurate.
d. The following facts serve to illustrate the difficulties in ascertaining why a given client is being denied assistance:
   i. For example, FEMA agents at some point transposed the digits in the address of one of our clients.
   ii. This client, Gary McKendall, now lives in San Antonio, Texas. Mr. McKendall told me that before Hurricane Katrina, he had been in the process of moving to 7803 Read Blvd., New Orleans LA 70127 from the Days Inn where he had been living, which is located at 5301 Read Blvd., New Orleans, LA 70127.
   iii. However, the FEMA agent who answered the phone on June 26, 2006, when I called to inquire as to the client's situation would not give me any information about the client's file, because the address FEMA had for Mr. McKendall differed from the address on file: 8703 Read Blvd., New Orleans LA 70127. Mr. McKendall assured me he was aware of the problem and had attempted to correct it already, apparently without success.
   iv. I called FEMA again on June 26, 2006, on Mr. McKendall's behalf, and spoke to another agent, "Charles," whose FEMA identification number is 7071, who—assuming my recollection is correct—told me he would rectify the erroneous address and send the client a medical assistance application form.
   v. On July 10, 2006, I made another call to FEMA on Mr. McKendall's behalf and spoke to an agent named "Carnita," identification number 7301. According to this agent, FEMA still listed Mr. McKendall's pre-disaster address as 8703 Read Blvd. Carnita also told me the medical assistance application form had never been sent.

10. I have never spoken to the same FEMA Helpline agent more than once; on one occasion when I attempted to request a specific agent (by name and identification number), I was informed that there is no way to tell where that agent is or how he or she can be reached.

11. It is very uncommon that FEMA agents contact us in response to a client's appeal or our calls to FEMA on the clients' behalf; it has happened to me only twice.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Name: _Martha M. Beard-Duncan_

Date: _30 August 2005_

Address: 1405 Justin Lane Austin, TX 78757

Beard-Duncan Affidavit, ACORN v. FEMA, Page 2 of 2