IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), *et al.* | § § § § | |
| Plaintiffs, | § § | Civil Action No. 06-1521-RJL |
| v. | § § § | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA), | § § § § | |
| Defendant. | § | |

# Exhibit 10

To Plaintiffs' Motion for a Temporary Restraining Order

DECLARATION

My name is Sasha Moreno and I have worked as an advocate for Texas RioGrande Legal Aid since September 2005 as a member of the Disaster Assistance team. I have been a licensed Texas attorney since April 2006. As a Disaster Assistance advocate, I have worked primarily with evacuees from hurricanes Katrina and Rita now living in Texas. For most of these evacuees, their primarily legal need is for assistance navigating the FEMA claims process. I estimate that I have been involved in more than 100 such client cases.

Throughout my time at Texas RioGrande Legal Aid, my clients and I have found the FEMA claims process frustrating. Clients typically call for Legal Aid's assistance after exhausting their own patience with the process: they have received letters that deny them rental assistance for mysterious reasons without guidance on how to appeal, and they have called FEMA officers on the Disaster Helpline and with each call, they receive a new explanation for their denial, often with conflicting advice on how to move forward with an appeal. Once I begin investigating on my client's behalf, I usually start by reviewing the letters the client has received and verifying their status with a call to FEMA officers. Often when I call FEMA again to verify that information, I will get a different answer entirely. I have never spoken to the same FEMA officer twice, and it seems that there are many irregularities in their information. On one occasion I was told that FEMA was "not in the business of providing housing assistance to these people" with the implication that my client, despite losing her home in a natural disaster, did not deserve assistance. I have repeatedly been refused the option of speaking to a supervisor or more senior case handler, even to clarify conflicting information from FEMA officers. As one example, after an officer told me that applicants could submit signed affidavits to prove their occupancy when no other proof of residency was available, I was told by another officer that such affidavits were no longer being accepted. When pressed, the officer said that in fact such affidavits might be accepted, but it "all depends on the caseworker." When my client's signed affidavit was refused, I was refused the chance to speak with a supervisor to explain what criteria was used in his or her decision in that particular case. I was told there was nothing else my client could do, and offered no enlightenment on how discretion is applied by caseworkers.

Even when FEMA officers are cooperative, there are still problems in communicating important information to the claimants. Ms. Mitchell, a typical client of mine, received a letter dated January 9, 2006 denying her request for assistance for the reason that she had been determined "W69D- Withdrawn- Signature not Obtained (90-69D)." Ms. Mitchell was enrolled in the City of Austin's rental assistance program and so she set this mysterious letter aside, unsure what it meant. In March of 2006, she received a check from FEMA for $2,700 with no explanation for its use. She was surprised later to receive a letter from FEMA on June 6, 2006 determining her ineligible for personal property assistance because of "insufficient damage." At this point, she had heard that the City of Austin's program was coming to an end and she called Legal Aid hoping to avoid eviction. On July 27, 2006 , I called FEMA to inquire about Ms. Mitchell's status as an applicant for rental assistance and personal property. The officer, William #73698, told

me that his file showed that Ms. Mitchell had "voluntarily withdrawn" on June 2, 2006. I asked for more information from the officer about how this might have happened as Ms. Mitchell was clearly still in need of rental assistance, struggling to make ends meet on her son's disability benefits. The FEMA officer said that he had found a note from June 2nd in Ms. Mitchell's file from an inspector who had reported to FEMA that she did not have any unmet needs at the time. Based on this inspector's note, her file had been put in to ineligible status. Ms. Mitchell did not receive any written communication from FEMA alerting her that she had been reported as ineligible due to an inspector's determination that she had no unmet needs nor was there any explanation as to how Ms. Mitchell's needs were being met. Ms. Mitchell remains without any relief for her personal property loss or her continuing rental assistance.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date: August 30, 2006