UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF COMMUNITY | ) | |
| ORGANIZATIONS FOR REFORM | ) | |
| NOW (ACORN), et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-1521-RJL |
| | ) | |
| FEDERAL EMERGENCY | ) | |
| MANAGEMENT AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S MOTION FOR A STAY PENDING APPEAL**

For the reasons set forth in the accompanying Memorandum of Law and declaration attached thereto, Defendant respectfully requests that the Court stay its November 29, 2006, Order granting plaintiffs' Motion for Preliminary Injunction [Docket No. 18], until defendant's appeal of the Order has been finally resolved.

Dated: December 5, 2006                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           JEFFREY A. TAYLOR
                                           United States Attorney


                                            _/s/ Christopher R. Hall_
_____
                                           MICHAEL SITCOV
                                           CHRISTOPHER HALL
                                           Trial Attorneys
                                           U.S. Department of Justice
                                           Civil Division
                                           Federal Programs Branch
                                           P.O. Box 883
                                           Washington, D.C.  20530

                                           (202) 514-4778

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF COMMUNITY | ) | |
| ORGANIZATIONS FOR REFORM | ) | |
| NOW (ACORN), <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-1521-RJL |
| | ) | |
| FEDERAL EMERGENCY | ) | |
| MANAGEMENT AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR A STAY PENDING APPEAL**

**INTRODUCTION**

The Court's November 29, 2006 Memorandum Order granting plaintiffs' motion for a

preliminary injunction directs defendant to immediately reinstate payments under Section 403 of

the Stafford Act to every person evacuated as a result of Hurricanes Katrina and Rita and

determined to be ineligible for assistance under Section 408 of the Act until those evacuees have

received "more detailed explanations" of the bases for their denial and have been provided "the

requisite amount of time to pursue administrative appeals thereof." <u>Id</u>. at 19.  The Order also

directs defendant "to pay each of these evacuees the [Section 403] assistance benefits they would

have otherwise received from September 1, 2006 through November 30, 2006." <u>Id.</u>

Defendant has appealed the November 30 Order  [Docket No. 20].  As we explain below,

the Court should stay the order until defendant's appeal has been finally resolved.

Defendant is likely to succeed on its appeal.  First, the Court has entered what is

essentially class-wide relief that applies to almost 18,000 persons scattered across the country, despite the fact that this is not a class action.  Regardless of the merits of plaintiffs' claims, the Court had no authority to provide relief to persons other than the four who actually are plaintiffs in this action or, at most, the thirty-two alleged members of ACORN who have testified by declaration that they were affected by the challenged actions.

Second, the absolute discretion accorded Defendant in administering the Stafford Act means both that the Court lacks jurisdiction over plaintiffs' claims and that plaintiffs lack any protectable property interest in assistance provided under the Act, a prerequisite for any claim under the Due Process Clause.  The two Stafford Act programs at issue here, Section 403 and Section 408, are entirely separate from one another; the fact that a person has received assistance under Section 403 has no bearing on her entitlement to relief under Section 408.  Congress has explicitly committed to defendant's unreviewable discretion the decision whether to make relief available under Section 403 in the first place in response to natural disasters.  Several months ago, defendant exercised its discretion to terminate the Section 403 Apartment Program as to victims of Hurricanes Katrina and Rita.  Not only was that decision entirely separate from defendant's decision with respect to any person's application for relief under Section 408, it was, by virtue of its entirely discretionary nature, insulated from this Court's review.  5 U.S.C. § 701.  Similarly, because the question whether to continue Section 403 is not one in which individuals have any protectable property interest, plaintiffs' due process claim lacks merit.  Thus, the order directing defendant to reinstate the Section 403 program is not likely to survive review by the Court of Appeals.

Third, FEMA already has informed every Katrina and Rita victim denied Section 408

relief of the basis of the denial, and offered each of them an opportunity to challenge the denial, which succeeded in many cases. Because that satisfied any due process obligations FEMA may have had, the Court's conclusion that FEMA denied disappointed applicants their due process rights will likely be reversed on appeal.

The breadth of relief the Court has ordered will cause defendant to suffer immediate and irreparable injury absent a stay pending appeal. The time, expense, and administrative burden that FEMA will be put through if it has to comply with the order will substantially interfere with its ability to carry out the emergency assistance duties that are its primary function during major disasters.

Finally, the balance of hardships and the public interest clearly favor entry of a stay pending appeal. The injunction the Court entered would require FEMA to administer the Stafford Act programs at issue in a manner that is inconsistent with their terms. That sort of order clearly is contrary to the public interest. Likewise, plaintiffs made no showing of harm to themselves justifying the harm to FEMA's overall operations that would be caused by a court order requiring FEMA to devote its resources to devising a means of reinvigorating a program it terminated months ago, while simultaneously implementing its many other programs that provide assistance to victims of Hurricanes Katrina and Rita and other natural disasters. Indeed, plaintiffs have not established that any individual has been erroneously deprived of housing assistance, much less that erroneous deprivations have occurred on a scale that would justify the sweeping relief ordered by the Court.

## BACKGROUND

1. Given the extensive briefing that preceded the November 29 Order, another detailed

3

discussion of the Section 403 and 408 programs is unnecessary.  It is sufficient instead to note that the two programs are entirely separate; that is, one need not apply for and obtain relief under Section 403 to be entitled to relief under Section 408.  Likewise, the fact that one receives relief under the former section is no guarantee that she will receive it under the latter.

As far as Section 403 is concerned, Congress explicitly committed exclusively to FEMA's discretion the decision whether and how to implement the program, 42 U.S.C. § 5170b(a), and forbade any Court from any reviewing any such decision, 42 U.S.C. § 5148. Relief under Section 403 is not triggered by requests from disaster victims, nor is it provided directly to them by FEMA.  Instead, the Section 403 program is implemented only in response to a request by a state or local government.  44 C.F.R. § 206.202( c); Declaration of Donna M. Dannels of September 11, 2006 (hereinafter, "Dannels Decl. I") ¶¶ 50, 57.  If such a request is granted, FEMA provides the funding for Section 403 assistance directly to the governmental requester, which then is responsible for distributing the money.  Dannels Decl. I ¶¶ 49-57.

Section 408 established a program under which FEMA provides assistance directly to victims of natural disasters.  Disaster victims apply directly to FEMA for Section 408 assistance, and FEMA uses a standardized letter to respond to requests for such assistance.  Dannels Decl. I ¶¶ 26-30, 36-37.  The letter informs applicants of the outcome of their applications by means of a code and a brief explanation of what the code means.  Id. ¶¶ 36-37.  FEMA provides every applicant for Section 408 assistance with a manual titled "Help After a Disaster: Applicant's Guide to the Individuals & Households Program" that explains the application process and includes a detailed explanation of what each code on a decision letter means.  Id. ¶ 40; Exhibit B to Dannels Decl. I.  Among other information, the Applicant's Guide explains how an

4

unsuccessful applicant for Section 408 assistance can appeal that decision administratively. Dannels Decl. I ¶ 40; Exhibit B to Dannels Decl. I at 10-11.

2.   Shortly after Katrina struck New Orleans on August 29, 2005, numerous state and local governments requested that the President declare a major disaster in their jurisdictions.  See Dannels Decl. I ¶¶ 4-5.  The President granted every such request, and FEMA began providing Section 403 assistance almost immediately.  Id. ¶¶ 59-65.

In February 2006, FEMA determined that it had become necessary to cease funding Section 403 assistance.  Id. ¶ 71.  Evacuees in the Section 403 Apartment Program deemed to meet the eligibility requirements for Section 408 assistance would be transferred into the Section 408 program.  Id.  Those who did not qualify for Section 408 assistance would cease receiving housing assistance after a certain period.  Id. ¶ 74.

In March 2006, FEMA sent letters to evacuees housed through the Section 403 Apartment Program notifying them as to their eligibility for Section 408 assistance.  Id. ¶¶ 72-74. Letters sent to those deemed eligible for Section 408 assistance informed them that they were eligible for rent assistance or participation in FEMA's Direct Landlord Payment program under Section 408.  Id. ¶ 73.  The letters also explained the procedure for applying and satisfying recertification requirements for continued Section 408 rental assistance.  Id.; Exhibit L to Dannels Decl. I.  Letters to those deemed ineligible for Section 408 assistance informed them of that fact and provided them thirty days to vacate their FEMA-funded residence.  Dannels Decl. I ¶ 74; Exhibit M to Dannels Decl. I.  These letters also informed unsuccessful applicants of the procedure for appealing their Section 408 ineligibility determinations.  Dannels Decl. I ¶ 74; Exhibit M to Dannels Decl. I.

5

On March 26, 2006, FEMA issued a Disaster Specific Guidance ("DSG") that, among other things, provided a process by which FEMA could inform state and local governments of the names of those Section 403 evacuees who met the eligibility requirements for transition to Section 408 assistance, and those who were ineligible for Section 408 assistance.  Dannels Decl. I ¶¶ 76-79; Exhibit N to Dannels Decl. I, "FEMA Recovery Disaster-Specific Guidance: Conversion of Assistance – 403 to 408," § VI.A.2.b(1).  The DSG also explained that, barring an extension, FEMA would not reimburse state or local governments for Section 403 costs after May 31, 2006.  Dannels Decl. I ¶ 79.  The DSG did, however, permit extensions of Section 403 assistance in limited circumstances.[1]

FEMA extended these deadlines on several occasions to provide additional time for Section 403 Apartment Program evacuees to establish their eligibility for Section 408 assistance, and for FEMA to continue its efforts to reach Section 408 applicants.  Id. ¶¶ 91-94.  Sixteen local governments requested extensions beyond the initial May 31, 2006 deadline to June 30, 2006.  Id. ¶ 91.  FEMA granted each of those requests.  Id.  Subsequently, several Texas jurisdictions requested additional extensions to July 31, 2006.  Id. ¶ 92.  FEMA granted every one that satisfied the DSG's guidelines.  Id.

On July 26, 2006, FEMA extended the entire Section 403 program until August 31, 2006, for those state and local governments still participating in it.  Id. ¶ 93.  On August 18,

---

[1] Extensions were permitted if:  (1) FEMA did not provide state and local governments with lists of ineligible and eligible tenants in sufficient time to accomplish a thirty-day notice to evacuees determined to be ineligible for Section 408 assistance, and their landlords; or (2) a state or local government could provide reasons why it could not provide the notices to landlords and evacuees within the time frame designated.  Dannels Decl. I ¶ 89; Exhibit N to Dannels Decl. I, "FEMA Recovery Disaster-Specific Guidance: Conversion of Assistance – 403 to 408," § VI.A.2.b(1).

2006, the City of Houston requested a fourth extension, through September 30, 2006, for applicants who had been determined ineligible for Section 408 assistance.  FEMA granted this request, but only for 113 applicants deemed to have the potential to be determined eligible for Section 408 assistance.  Id. ¶ 94.

3.  Plaintiffs filed their complaint on August 29, 2006, and then filed a motion for a temporary restraining order on August 31, 2006, the day the Section 403 Apartment Program was scheduled to expire for all but 113 of the Katrina applicants.  [Docket Nos. 1, 3.]  In Count I of their complaint, plaintiffs contend that they were denied due process because they were not provided sufficient notice of the reasons for the termination of their Section 403 assistance. Count II asserts that the termination of plaintiffs' Section 403 assistance on the basis of the same allegedly deficient notice violated the Administrative Procedure Act.

During a telephone hearing on August 31, 2006, the Court denied plaintiffs' TRO motion, and converted it into a request for a preliminary injunction to prevent defendant from ending the Section 403 program for Katrina victims.  [Docket No. 4].  The preliminary injunction motion was argued on September 15, 2006.  At the conclusion of the argument, the Court announced that it was taking the motion under advisement.  On September 30, the Section 403 Apartment Program finally was terminated for all Katrina victims.

On October 30, 2006 defendant moved to dismiss the complaint. [Docket No. 12.]  The motion explained that both counts of the complaint asserted claims based on the termination of assistance plaintiffs had been receiving under Section 403.  Because that program had already been terminated, and because the decision whether to implement it was committed entirely to FEMA's discretion, plaintiffs' claims were moot.  Defendant also explained that plaintiffs'

claims would be barred by sovereign immunity even if they were not moot because they challenged actions that were committed to FEMA's discretion.  Finally, defendant explained that the individual plaintiffs and ACORN all would have lacked standing even if their claims were not moot and did not challenge matters committed to agency discretion.

4.  The November 29 Order construes plaintiffs' claim as a challenge to the notice of ineligibility for assistance under the Section 408 housing assistance program.  It first holds that because plaintiffs challenge the sufficiency of the notices of their ineligibility for Section 408 assistance, and not the substance of decisions the notices announced, the court has jurisdiction directly under the Constitution to consider plaintiffs' claims.  Id. at 7.  Next, it held that the participation of individual plaintiffs is unnecessary to resolve plaintiffs' claims and that ACORN has standing to assert them.  Id. at 8-10.

Turning to the preliminary injunction, the Court held that plaintiffs were likely to succeed on the merits of their claims because they have a protectable property interest in the continuation of FEMA housing assistance.  Ord. at 12.  Applying the factors explained in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the court determined that plaintiffs had a fundamental and overarching interest in the continuation of Section 403 assistance, Ord. at 12-13; that FEMA's confusing letters notifying plaintiffs of the denial of their applications for Section 408 assistance created a risk of erroneous deprivation, id. at 13-16; and that the costs to the government of providing more complete explanations of the reasons plaintiffs' assistance was terminated "do not begin to outweigh the high private interest of those evacuees facing eviction and the considerable risk of erroneous determinations caused by vague and cryptic explanations." Id at 16.

The Court also held that while plaintiffs' delay in filing suit might have had some impact with respect to their TRO motion, it is irrelevant for purposes of their preliminary injunction motion.  Ord. at 17.  Finally, the Court found that FEMA had failed to show that it would be harmed if it is required to provide a more complete explanation "regarding an applicant's lack of eligibility," and that the public interest is served when "the government maintain[s] procedures that comply with constitutional requirements."  Id. at 18.

The injunction requires FEMA to provide, as soon as possible, "more detailed explanations for the denials of evacuees' eligibility for housing assistance benefits under Section 408, including the factual and statutory basis for the denial and more fulsome instructions as to how to each evacuee may either cure their ineligibility problem(s) or proceed with an appeal." Ord. at 18.  FEMA also is required "to immediately restore Section 403 short-term housing assistance benefits to all evacuees who, as of August 31, 2006, had been found ineligible for Section 408 benefits until such time as they have received the more detailed explanation and have had the requisite amount of time to pursue an administrative appeal thereof."  Id. at 19. Finally, FEMA is directed to make a cash payment to each evacuee that is equal to the amount of Section 403 assistance each of them would have received from September 1, 2006 through November 30, 2006.  Id.

Plaintiffs have now filed a motion seeking an order requiring Defendant to file a plan detailing how it will follow the November 29 Order and setting a status conference by "the earliest available time." Pls.' Mot. for Compliance Plan and Status Conf., Dec. 5, 2006 [Docket No. 19].

5.  FEMA will experience substantial harm if it is required to adhere to the directives

9

established by the November 29 Order.  Most fundamentally, the order would require FEMA to

reconstitute some form of Section 403 assistance for almost 18,000 disappointed Section 408

applicants entirely from scratch, which would be an extraordinarily difficult, if not impossible,

task.[2]  As explained above, Section 403 does not authorize FEMA to provide short-term housing

assistance benefits directly to disaster victims.  Therefore, FEMA must secure the cooperation of

state and local governments before it may provide funding to reinstitute any Section 403

program.  See Declaration of Donna M. Dannels of December 5, 2006 ("Dannels Decl. II") ¶¶

19-20.  The means by which FEMA worked with those entities to respond to Hurricane Katrina –

the Section 403 Apartment Program – was terminated three months ago.  Id. ¶ 21.  For FEMA to

resurrect that program – or create a similar program – state and local governments first would

have to agree to participate in it and then would have to enter into thousands of leases with

private landlords simply to obtain available rental units.  Id. ¶¶ 19-21.  But FEMA cannot compel

any state or local government to participate in the Section 403 program.  Id. ¶ 21.  And even if

such governments agreed to participate in a reconstituted Section 403 program, FEMA cannot

control the type or amount of shelter they would be willing to provide.  Id. ¶¶ 22-23.  Thus,

assuming FEMA could fund the provision of shelter for almost 18,000 Section 408 applicants, it

would have virtually no control over how, where, or even when such shelter might be provided.[3]

---

[2]  A preliminary review of FEMA's NEMIS database after the Court's Nov. 29 Order
identified almost 18,000 applicants who received shelter under Section 403 at some point and
had been determined ineligible for Section 408 assistance.  Declaration of Donna M. Dannels,
December 5, 2006 ("Dannels Decl. II") ¶ 8.

[3]  To the extent the November 29 Order could be construed to require FEMA to directly
provide checks to unsuccessful Section 408 applicants for retroactive, lump sum Section 403
emergency assistance, such an order would constitute an awards of damages rather than
injunctive relief, and as such, would not represent a permissible remedy against the United States

Just as importantly, the funding of temporary shelter required by the order would substantially harm FEMA in at least two ways. First, the estimated cost of rent payments from September through November for the almost 18,000 Section 408 applicants potentially eligible for Section 403 shelter under the Court's order would be approximately $41.7 million. Id. ¶ 29.[4] The estimated cost of rent payments for the same persons from December through February would be the same amount, making the total emergency shelter cost of FEMA's compliance with the November 29 Order to approximately $83.4 million for six months of assistance. Id. ¶ 33.[5] Additional costs of compliance with the order would include an estimated $2.8 million for administrative fees FEMA must pay to the participating state and local governments under a Section 403 program, Id. ¶ 33, which would push the total cost of compliance with this portion of the order to an estimated $86.2 million, Id. ¶ 34.

---

in a claim alleging a violation of the Due Process clause. See United States v. Testan, 424 U.S. 392 (1976).

[4] This estimate is based upon an average monthly rent of $786 – the national average "Fair Market Rent," or FMR, calculated by the Department of Housing and Urban Development – multiplied by approximately 18,000 applicants over a three-month period. See Dannels Decl. II ¶ 29.

[5] This estimate assumes that state and local governments could enter into short-term lease periods with the private landlords necessary for the recreation of a Section 403 Apartment Program. Such an assumption is likely unrealistic, based on FEMA's experience; many of the leases signed by the state and local governments that participated in the Section 403 Apartment Program were one-year leases. Dannels Decl. II ¶ 21. Thus, to the extent that state and local governments participating in a new Section 403 program would again be forced to enter into numerous one-year leases that would expire no sooner than the end of 2007 or early 2008, FEMA would be required to incur significant costs to pay for lease termination fees or excess housing capacity extending far beyond the period mandated by the November 29 Order. Id. For that reason, the estimated $83.4 million cost for providing retroactive and prospective Section 403 emergency shelter assistance to almost 18,000 Section 408 applicants is likely far short of the true cost of such assistance.

Second, the provision of emergency shelter assistance under the terms of the Court's order could place FEMA in violation of its statutory directives and fiscal obligations. For example, it would require FEMA to disregard actual living expenses of Section 403 recipients, potentially providing payments in excess of actual housing costs to many of the evacuees potentially covered by the Court's order. Id. ¶ 30.

Finally, even assuming that a new Section 403 program could be created and put into place, FEMA faces enormous administrative and logistical difficulties in identifying evacuees who are potentially eligible for assistance under Section 408, determining their basic eligibility status, and communicating with them. First, FEMA would have to contact each potentially eligible applicant simply to verify that FEMA has the applicant's current address. Id. ¶ 11. FEMA estimates that it would take three to four weeks to successfully contact 95 percent of all such applicants. Id. Second, FEMA would have to manually review the application of each of the almost 18,000 unsuccessful Section 408 applicants to identify the basis for its ineligibility determination. This step would require approximately 200 caseworkers to spend 16,000 employee-hours. Id. ¶ 16. Finally, each time an individual case has been reviewed, FEMA would have to prepare a personalized letter complying with the terms of the Court's order. Because NEMIS does not have the capacity to prepare individualized letters, they would have to be drafted by a contractor, with FEMA caseworkers completing the letters by filling in the individual applicant details, among other things. Id. ¶ 17. FEMA caseworkers would be required to spend an estimated 22,576 employee-hours on this effort. Id.

## ARGUMENT

### I.     STANDARD OF REVIEW

Rule 62 of the Federal Rules of Civil Procedure permits the trial court "in its discretion

[to] suspend ... an injunction during the pendency of an appeal."  The factors that must be

considered in making this decision are: (1) the likelihood that the party seeking the stay will

prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably

harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and

(4) the public interest in granting the stay.  Cuomo v. U.S. Nuclear Regulatory Comm'n, 772

F.2d 972, 974 (D.C. Cir.1985) (citing Wash. Metro. Area Transit Comm'n v. Holiday Tours,

Inc., 559 F.2d 841, 843 (D.C. Cir.1977)).  "To justify the granting of a stay, a movant need not

always establish a high probability of success on the merits. Probability of success is inversely

proportional to the degree of irreparable injury evidenced.  A stay may be granted with either a

high probability of success and some injury, or *vice versa.*"  Id.

In addition, where an injunction may "significantly interfere[] with the distribution

between administrative and judicial responsibility" for the enforcement of a particular statutory

scheme, a stay pending appeal may be appropriate independent of the merits.  See Heckler v.

Lopez, 463 U.S. 1328, 1331 (Rehnquist, J., in chambers), motion to vacate denied, 464 U.S. 879

(1983).  This may be the case where "significant interference" is the result of an injunction's

broad scope or mandatory nature, see id., including instances where the injunctive relief granted

would extend beyond parties within the jurisdiction of the court, see id. at 1334.  In such cases, a

stay may be appropriate in part because of the courts' "duty 'to observe the conditions defined by

Congress for charging the public treasury.'"  Id. (quoting Schweiker v. Hansen, 450 U.S. 785,

13

788 (1981) (internal quotes omitted)).

**II.  FEMA IS LIKELY TO SUCCEED ON THE MERITS OF THE SERIOUS LEGAL QUESTIONS PRESENTED BY ITS APPEAL OF THE PRELIMINARY INJUNCTION ORDER**

The November 29 Order requires that FEMA do three things (although not in the following order).  First, FEMA must reinstate prospectively Section 403 assistance for every person who formerly received that assistance but who was found ineligible for assistance under Section 408.  Second, FEMA is ordered to retroactively pay in a lump sum the amount of Section 403 assistance those persons would have received from September 1 through November 30, 2006.   Finally, FEMA is required to provide each unsuccessful applicant for Section 408 assistance with a more complete and individualized explanation of the reason(s) for the denial of her application for Section 408 assistance, as well as instructions for how she can correct the deficiencies or proceed with an appeal.

As we now explain, the Court improperly granted an injunction that applied to persons other than the four named plaintiffs or, at most, the additional thirty-two alleged ACORN members who have submitted declaration testimony.  Moreover, the Court lacks jurisdiction to order the first two forms of relief.  Finally, there was no violation of the Due Process Clause, as plaintiffs lack any protectable property interest under the clause and, even if such an interest existed, plaintiffs received all of the notice to which Due Process entitles them.  Thus, there is no basis for the Court to have ordered the final form of relief.

a. Even if the Court's holding that plaintiffs possessed a property interest in "continued housing assistance" was correct – and we explain in detail below that it was not – the preliminary injunction is unjustifiably broad because it applies to *all* evacuees who have been

denied housing assistance benefits under Section 408, not just to the four named plaintiffs. It requires FEMA to issue new notices of the basis for the finding of noneligibility to each such evacuee, regardless of whether the notice to a given individual was itself deficient. Further, the order requires FEMA to "restore" Section 403 benefits to all evacuees who had been found ineligible for Section 408 benefits as of August 31, 2006, without any regard to their present housing situation and whether they even need such "benefits."

There is no basis for the Court to award relief on what is essentially a class-wide basis where no class has been certified (or even identified). See Lever Bros. Co. v. United States, 981 F.2d 1330, 1338 (D.C. Cir. 1993) (nationwide injunction prohibiting Customs Service from enforcing regulation against "'foreign goods that bear a trademark identical to a valid United States trademark but which are materially, physically different'" was overbroad where "suit was brought by a single company, proceeding solely on its own behalf, to protect two specific trademarks"); see also Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1501 (9th Cir. 1996) ("injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification"); Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."). Indeed, the Ninth Circuit has vacated portions of a similar injunction on the basis of overbreadth. See Meinhold v. Department of Defense, 34 F.3d 1469, 1480 (9th Cir. 1994) (holding that "so much of the [district court's order] as grants relief to persons other than [the named plaintiff] is stayed pending disposition of the appeal" by the Ninth Circuit).

The preliminary injunction is not limited to the named plaintiffs, to ACORN members

who have claimed that they received inadequate notice, or even to ACORN members generally. FEMA reports that it has found almost 18,000 applicants ineligible for Section 408 assistance, and not all of those people were in Section 403 housing at the time FEMA terminated the Section 403 Apartment Program. By its terms, however, the preliminary injunction would require FEMA to reinstate the Section 403 Apartment Program – or something very similar – not only for those who were directly affected by its termination in August 2006 (and, for some in Houston, in September 2006), but also to all evacuees who have been found ineligible for temporary housing benefits under Section 408.

In Heckler v. Lopez, then-Justice Rehnquist stayed one provision of a trial court injunction similar in scope to the one entered here. 463 U.S. at 1334. In Heckler, part of the trial court's preliminary injunction against the Department of Health and Human Services ("HHS") required the agency to pay social security disability benefits to any person whose benefits had been terminated within the preceding two years for "cessation of disability," irrespective of whether such persons had actually proven their entitlement to benefits. 463 U.S. at 1334 ("The Secretary's obligation to pay is triggered merely by the recipient's statement in his application that, in his subjective belief, his medical condition has not improved since the earlier determination."). Justice Rehnquist concluded that the mandatory nature of the class-wide injunction, combined with its wide-ranging scope – the class definition included persons who had not satisfied administrative exhaustion requirements and thus were arguably outside the trial court's jurisdiction – warranted a stay pending appeal. Id. at 1331-34.

Here, like Heckler, the Court's order represents a mandatory injunction that would require FEMA, *inter alia*, to provide benefits on a national basis to thousands of persons who are

16

not parties to this case.  As in <u>Heckler</u>, this mandatory injunction would significantly interfere

with FEMA's enforcement of the Stafford Act by requiring it to reinstitute the Section 403

Apartment Program months after that program's termination.  Finally, enforcement of the order

pending appeal would run afoul of the judiciary's "duty 'to observe the conditions defined by

Congress for charging the public treasury.'" <u>Heckler</u>, 436 U.S. at 1334 (quoting <u>Schweiker v.

Hansen</u>, 450 U.S. at 788 (internal quotes omitted)).

Plaintiffs' claim is that specific notices did not provide applicants with an adequate basis

to take an informed appeal.  There is no proper basis to conclude that the process was so

systemically flawed as to render it constitutionally inadequate in all instances.  The September

11, 2006 declaration of Donna M. Dannels submitted by the government makes clear that FEMA

made extraordinary efforts to ensure that evacuees had every opportunity to challenge an

ineligibility determination.  <u>See</u> Dannels Decl. I ¶¶ 37-42 (describing ineligibility notices and

appeals process); <u>id.</u> ¶¶ 101-12 (describing outreach to evacuees who received ineligibility

determinations and agency's own initiative to revisit those determinations, resulting in thousands

of additional findings of eligibility).  Given the individualized determinations needed to

determine whether the notice a particular individual received was inadequate, the Court acted

improperly in granting relief to persons not before it.

b.  Congress could not have made it more clear that the Court lacks jurisdiction to

resurrect the Section 403 program, as it has done through the November 29 Order.  The Stafford

Act provides that the federal government "shall not be liable" for any claim based on a federal

agency's or employee's "exercise or performance of or the failure to exercise or perform a

discretionary function or duty." 42 U.S.C. § 5148.[6]   And there is no doubt whatsoever that the

provision of assistance under Section 403 is a matter committed entirely to FEMA's discretion.

If the President declares a "major disaster" or emergency, he retains the discretion to

determine and designate the type of assistance available and the areas eligible to receive it.  This

is clear from the language of the Stafford Act, which is written entirely in permissive terms:

> In any major disaster, the President <u>may</u> —
>
> (1) direct any Federal agency . . . to utilize its authorities and the
> resources granted to it under Federal law . . . in support of State
> and local assistance efforts . . . [and]
>
> (4) assist State and local governments in the distribution of
> medicine, food, and other consumable supplies, and emergency
> assistance.

<u>Id</u>.§ 5170a (emphasis added).

In addition, the provisions of the Stafford Act that authorize "Federal assistance to

individuals and households," which encompass Section 408, are also written in permissive terms:

> [T]he President, in consultation with the Governor of a State, <u>may</u>
> provide financial assistance, and, if necessary, direct services, to
> individuals and households in the State who, as a direct result of a

---

[6] Congress included this language to ensure that if "mistake[s]" were made in the admin-
istration of federal disaster relief, "the Government may not be sued . . . [and] that there shall be
no liability on the part of the Government."  <u>See</u> 96 Cong. Rec. 11895, 11912 (1950) (statement
by chairman of House Public Works Committee).  As explained by the U.S. Court of Claims:

> This provision, on its face, clearly precludes federal governmental liability for its
> action or inaction in providing disaster relief. . . . Congress clearly manifested its
> intent to raise a statutory barrier to judicial review . . . . Additionally, the emer-
> gency assistance given under the Act constitute[s] a gratuity.  Liability should not
> be imposed on the federal government for discretionary acts or omissions of its
> agencies or employees in distributing benefits under such gratuitous programs.

<u>Ornellas v. United States</u>, 2 Cl. Ct. 378, 379-80 (1983).

> major disaster, have necessary expenses and serious needs in cases in
> which the individuals and households are unable to meet such
> expenses or needs through other means.

Id. § 5174(a)(1) (emphasis added).  The Act also states that the President "may" provide

"[h]ousing assistance" to "individuals and households who are displaced from their predisaster

primary residences or whose predisaster primary residences are rendered uninhabitable as a result

of damage caused by a major disaster," id. § 5174(b)(1), and empowers the President to "deter-

mine appropriate types of housing assistance to be provided . . . based on considerations of cost

effectiveness, convenience to the individuals and households, and such other factors as the

President may consider appropriate."  Id. § 5174(b)(2)(A).

    The preliminary injunction the Court entered explicitly requires defendant to operate the

Section 403 program, despite the fact that defendant exercised its discretion to terminate the

program three months before the Court entered the November 29 Order.  Thus, even if plaintiffs'

claims regarding defendant's decision to terminate Section 403 assistance somehow were not

rendered moot by that decision, the decision whether to provide assistance under Section 403 at

all is one that is expressly committed by law to defendant's unreviewable discretion.  5 U.S.C. §

701; cf. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 66-67 (2004) ( it is not

for a court to "to work out compliance with [an agency's] broad statutory mandate," thereby

"injecting the judge into day-to-day agency management").

    c.  Jurisdictional issues notwithstanding, defendant has a significant likelihood of

prevailing on appeal on the substance of plaintiffs' due process claim because plaintiffs do not

possess a protectable property interest in FEMA assistance provided under either Section 403

or Section 408.  The Court characterized plaintiffs' property interest here as an interest "in the

perpetuation of their housing throughout the Section 408 application and FEMA appeals process." Ord. at 13. That characterization is incorrect, as it assumes both that plaintiffs were entitled to continuing assistance under the Section 403 Apartment Program and that plaintiffs had proven their eligibility for Section 408 assistance. Both assumptions are incorrect.

To possess a protectable property interest in a benefit, plaintiffs must possess a "legitimate claim of entitlement to it." American Mfrs. Mut. Ins. v. Sullivan, 526 U.S. 40, 60-61 (1999) (holding that claimants had no property interest in receiving benefits to which they had not yet established entitlement); Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Roth v. King, 449 F.3d 1272, 1284 (D.C. Cir. 2006) (property interest requires more than abstract need or unilateral expectation). The courts have repeatedly held that plaintiffs can possess no "legitimate claim of entitlement" to a governmental benefit if discretion is exercised in providing the benefit. See Roth v. King, 449 F.3d at 1285; Washington Legal Clinic for the Homeless v. Barry, 107 F.3d 32 (D.C. Cir. 1997) (no entitlement because government retained discretion in provision of housing assistance, even though statutory and regulatory guidelines determined basic eligibility); PDK Labs Inc. v. Reno, 134 F. Supp. 2d 24, 32 (D.D.C. 2001) (no property interest "where a statute leaves discretion with the government in awarding benefits"); see also Hill v. Group Three Housing, 799 F.2d 385, 389-92 (8th Cir. 1986) (despite federal guidelines, Section 8 applicants possessed no protectable property interest in housing where private property owners retained discretion in tenant selection).

Plaintiffs cannot demonstrate a legitimate claim of entitlement to assistance under Section 403, because FEMA retains absolute discretion as to whether to provide Section 403

assistance in the first place and how and when to terminate such assistance.  See 42 U.S.C. § 5170b(a).  Like the other provisions of the Stafford Act, the language of Section 403 has none of the "mandatory quality" that creates legitimate property interests under the Due Process Clause. See Soeken v. Herman, 35 F. Supp. 2d 99, 105 (D.D.C. 1999).  Thus, plaintiffs can possess no "legitimate claim of entitlement" to federal disaster assistance or to receiving notice regarding the termination of such assistance.  See, e.g., Sullivan, 526 U.S. at 60-61.  Further, the question whether to continue the Section 403 program as a whole was not one that turns on individualized interests, and therefore not one on which "all individuals have a constitutional right to be heard." Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915)  ("The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. * * * Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.").  Thus, plaintiffs lack any constitutionally protected property interest in the continuation of Section 403 assistance.

Likewise, plaintiffs possess no protectable property interest in Section 408 assistance. Section 408 is entirely separate from Section 403; the fact that one receives assistance under the latter is irrelevant to whether she is entitled to the former.  On the contrary, a person must provide all required information and materials to meet the statutory and regulatory eligibility criteria for Section 408 assistance.  See Dannels Decl. I ¶¶ 17, 23.  Until an applicant has met such requirements, she has no protectable property interest, and thus no claim under the Due Process Clause.  See Sullivan, 526 U.S. at 60-61.

d.  Finally, even assuming that plaintiffs do possess a protectable property interest in Section 408 assistance, defendant also has a significant likelihood of prevailing on appeal with

respect to the Court's determination that the notices of ineligibility FEMA sent to disappointed applicants for Section 408 assistance did not satisfy minimum due process standards. While the Court is correct that, if a protectable property interest exists, <u>Mathews</u> provides the framework for a claim regarding the adequacy for due process purposes of the procedure by which the government may interfere with such a property interest, the Court misapplied all three prongs of the <u>Mathews</u> test in this case.

First, the Court incorrectly characterized the "private interest" that is the subject of the first <u>Mathews</u> criterion as plaintiffs' "interest in continued housing assistance." Ord. at 13. According to the Court, "plaintiffs have a high private interest in the perpetuation of their housing throughout the Section 408 application and FEMA appeals process." <u>Id</u>. The problem is that plaintiffs were receiving assistance under Section 403 at the time their Section 408 assistance was denied. As we explained above (and in the memoranda we filed in opposition to plaintiffs' preliminary injunction motion and in support of defendant's motion to dismiss), the two programs are entirely separate; one need not obtain assistance under the former program to be entitled to assistance under the latter, and the fact that one qualifies for assistance under the former is no guarantee of entitlement under the latter. Thus, plaintiffs had no protectable property interest in Section 408 housing assistance. <u>See</u> <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 60-61 (1999) (holding that claimants had no property interest in receiving benefits to which they had not yet established entitlement). Moreover, the decision whether to provide any assistance under Section 403 is left entirely to FEMA's discretion. Thus, the fact that plaintiffs formerly received Section 403 assistance was no guarantee that that assistance would continue, let alone that it would continue for the duration of the period in which plaintiffs'

applications for an entirely separate program were considered.  Cf. Watson v. FEMA (No. 06-20651) (5th Cir. Sept. 6, 2006), vacating Watson v. FEMA, 437 F. Supp. 2d 638 (S.D. Tex. July 13, 2006), (reversing and vacating district court order granting preliminary injunction ordering FEMA to pay separately metered utilities of Katrina victims receiving Section 408 assistance).  For these reasons, plaintiffs had no protectable property interest in Section 403 emergency shelter assistance.  See Sullivan, 526 U.S. at 60-61.

Second, in applying the second Mathews criterion, which considers the risk of erroneous determinations of plaintiffs' private interests through the procedures used, the Court's holding is in direct conflict with Lepre v. Dep't of Labor, 275 F.3d 59 (D.C. Cir. 2001), which held that the availability of effective appeal procedures satisfied due process concerns even where the plaintiff received no prior notice that his benefits were being terminated.  275 F.3d at 71 ("Where a notice is lost in the mail, the availability of agency reconsideration and appeal provide sufficient avenues of redress and rectification to meet the requirements of due process.").

Just as significantly, the Court ignored the undisputed evidence in the record of the extraordinary effort that FEMA had undertaken to ensure that those originally denied Section 408 assistance could somehow be found eligible to receive it.  See Dannells Decl. I ¶¶ 101-12.  The Court apparently agreed with plaintiffs' suggestion that FEMA's additional outreach efforts – which in fact resulted in thousands of Katrina evacuees gaining eligibility for Section 408 assistance after previous determinations that they were ineligible – suggested that "thousands of applicants were *erroneously* ruled ineligible for benefits only to have them reinstated weeks later."  See Nov. 29 Order at 15 (emphasis in original).  Such a conclusion is unsupported by the record.  Applicants for Section 408 assistance must prove their eligibility for it by providing,

23

inter alia, proof of residency, proof of damage to their pre-disaster dwellings, and current rent receipts. Otherwise, they are ineligible for Section 408 assistance as a matter of law. Dannels Decl. I ¶¶ 17-18, 23. FEMA's outreach efforts represented a coordinated, sustained attempt to help applicants meet their burden to satisfy these statutory requirements by ensuring that they provided the required information and materials. Id. ¶¶ 101-12. That thousands of initial eligibility determinations were subsequently reversed does not suggest error on FEMA's part. Rather, it demonstrates exactly the opposite: viz., the efficacy of FEMA's efforts to assist as many Katrina and Rita evacuees as possible in meeting the statutory criteria for Section 408 assistance.

Moreover, there is no dispute about the fact that every plaintiff whose application for Section 408 assistance was denied was provided an opportunity to challenge the denial through FEMA's administrative appeal process. There is no basis for finding that the agency's system for notifying applicants for Section 408 assistance of the results of their applications was inherently flawed, as the Court did here, simply because some individuals were confused by the paperwork they received.

The Court relied upon two D.C. Circuit cases to support its conclusion that "[g]uessing by an applicant from among several explanations for ineligibility does not serve the fundamental purposes of due process." Ord. at 13-14 (citing Gray Panthers v. Schweiker, 652 F.2d 146, 168-69 (D.C. Cir. 1980); Reeve Aleutian Airways, Inc. v. United States, 982 F.2d 594 (D.C. Cir. 1993)). Neither case is applicable to plaintiffs' claims. In Gray Panthers, 652 F.2d 146 at 168-69, the court rejected a procedure whereby elderly medicare claimants were informed of the reason for their denial of benefits only in a "cryptic notice" on a form that

24

was the "sum total of the communication from decisionmaker to claimant before a final

denial," and was received "only after an initial denial ha[d] already been made." The court

expressly noted that "[t]he claimant has no opportunity to flesh out the notice at any stage by

access to the files or informal consultation with either the initial or reviewing decisionmaker

before a final and irrevocable denial of benefits is made." Id. at 169. Here, by contrast,

FEMA affirmatively encouraged claimants to contact the agency informally to discuss any

ineligibility determination, and submit additional evidence to clear up any difficulties. The

anecdotal evidence submitted by plaintiffs does not support a contention that the entire system

that the agency employed – under extremely difficult circumstances – was constitutionally

deficient.

Reeve provides even less support for the court's order, inasmuch as there the court

found the notice at issue constitutionally adequate. Reeve Aleutian Airways, Inc., 982 F.2d at

211-12 (no due process violation where plaintiff "was told explicitly what the dispute was

about, although perhaps not what factors weighed most heavily on [the agency's] collective

mind" and where plaintiff had opportunity to follow up with a person knowledgeable about his

case).

The Supreme Court's holding in Mathews does not require a process that guarantees

whatever outcome plaintiffs desire; it simply ensures a process that is fair. Here, the empirical

evidence leaves no doubt that FEMA's administrative process for resolving applications for

Section 408 assistance, including the administrative appeal mechanism, guaranteed a sufficiently

low risk of erroneous denials of such applications.

Finally, the third Mathews factor, which considers "the Government's interest, including

25

the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail," 424 U.S. at 335, clearly favors defendant. Katrina was the largest natural disaster in U.S. history. Hundreds of thousands of people were displaced and sought Section 403 assistance, and tens of thousands of them also sought Section 408 assistance. Thus, FEMA had to balance the enormous expense of the assistance it provided, and the burden it was under to provide that assistance as quickly as possible, against the need to decide as promptly and accurately as it could who would be eligible for the assistance it disbursed. Clearly, the government's interest in a procedure that was both expeditious and fair, as FEMA's was, is high.

It is just as clear that a process for acting on applications for Section 408 assistance like the one the preliminary injunction mandates would unnecessarily tie FEMA in knots and dramatically delay its resolution of plaintiffs' requests for assistance. FEMA estimates that there may be almost 18,000 disappointed applicants for Section 408 assistance. Requiring FEMA to provide the sort of "fulsome" denial decisions the Court has ordered, see Ord. at 18, would be a significant undertaking. Thus, the notion that that many claims could be decided easily and promptly in a more procedurally complex manner is mistaken. Moreover, the Court offered no evidence to support its assertion that the dramatically more intrusive and expensive procedure it has ordered "would so readily yield" favorable results for plaintiffs. Ord. at 17.

Finally, even if a few individuals had been able to make the difficult showing that the notice they received was constitutionally deficient, the appropriate remedy would not be an injunction like the one the Court ordered. Rather, those individuals might be entitled to additional notice and an additional opportunity to administratively appeal. But they would not be

26

entitled to the reinstatement of Section 403 emergency shelter or to the receipt of Section 408 rental assistance unless there is a basis for finding that they are entitled to either of those benefits. And there has been no such showing here.

### III.    FEMA FACES THE THREAT OF IRREPARABLE INJURY IF THE STAY IS NOT GRANTED

A stay pending appeal is warranted where the movant would be "faced with an administrative nightmare" in complying with a court order. Ruiz v. Estelle, 650 F.2d 555, 571 (5th Cir. 1981) (stay granted where burden on state agency in terms of time, expense, and administrative red tape is too great).  That is exactly what FEMA will face if the November 29 Order is not stayed pending FEMA's appeal.  The threat of such injury is compounded by plaintiffs' motion seeking an order requiring Defendant to submit a detailed plan setting forth how it will comply with the November 29 Order, and submit to a status conference regarding such a plan, "at the earliest possible time."  Pls.' Mot. for Compliance Plan and Status Conf. [Docket No. 19].  Requiring FEMA to immediately begin complying with the order, at enormous financial and administrative cost, would impermissibly involve the Court in the implementation of statutory objectives exclusively within FEMA's authority.

First, requiring FEMA to reconstitute a Section 403 emergency shelter program for the almost 18,000 applicants potentially encompassed by the preliminary injunction would require as much as $86.2 million for emergency shelter payments and administrative fees – and the substantial cooperation of an indeterminate number of state and local governments, without which there can be no Section 403 assistance as a matter of law.  As described above and in our previous submissions to the Court, Section 403 does not authorize FEMA to provide short-term

housing benefits directly to disaster victims.  Dannels Decl. II ¶ 20.  Rather, FEMA must work

with state and local governments (who in turn must work with private landlords to obtain

available rental units under any program similar to the Section 403 Apartment Program used for

the first time in response to Hurricane Katrina).  Id. ¶¶ 19-21, 23.  Thus, there is no guarantee

that FEMA could even provide housing for all or even most of those persons covered by the

Court's order, or that such housing could be provided in sufficient time to comply with the order.

Second, requiring FEMA to redo almost 18,000 eligibility determinations in the form the

Court has directed would require, *inter alia*, the diversion of a significant portion of FEMA's

staff to that task and away from their regular duties of responding to disasters and assisting

disaster victims.  For example, manual reviews of that many Section 408 applications would

require the design and implementation of an entirely new computer database and approximately

16,000 employee-hours from 200 FEMA caseworkers.  Dannels Decl. II ¶¶ 15-16.  Similarly, the

preparation of individualized determination letters for the same number of applications – a task

that FEMA's automated NEMIS system is not capable of performing – would require the retainer

of a private contractor and a projected 22,576 employee-hours of FEMA caseworker time.  Id. ¶

17.

Third, the November 29 order directs FEMA to provide more detailed explanations for

its denials of plaintiffs' applications for Section 408 assistance and more "fulsome" explanations

of how each applicant can cure the defects in his application.  Aside from providing no guidance

for what constitutes a sufficiently "detailed" explanation, the order presumes that every applicant

for Section 408 assistance is entitled to it.  Ord. at 12.  That is incorrect, and FEMA has no

statutory or regulatory authority to award housing assistance to persons ineligible to receive it.

See, e.g., 42 U.S.C. §§ 5151, 5155.[7]

## IV.    THE PUBLIC INTEREST FAVORS A STAY

It is in the public interest to permit FEMA to carry out the duties it has been assigned by Congress, and as long as the agency is complying with the law, the public interest is harmed by an order that would interfere with those duties.  See Virginian Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552 (1937) (statutory policy of Congress "is in itself a declaration of the public interest which should be persuasive" to courts); LABAT-Anderson, Inc. v. United States, 65 Fed. Cl. 570, 581 (Fed. Cl. 2005) ("The balance of hardships and the balance of harms tip in plaintiff's favor, but the public interest is not served by interfering with the [agency's] procurement process so long as the Agency did not violate applicable laws and regulations."); Consumers Power Co. v. Dep't of Energy, 1981 WL 1265, at *8 (E.D. Mich. 1981) (denying motion for preliminary injunction because, inter alia, the public interest would have been disserved by interfering with the implementation of an agency program).  Because, as described above, the implementation of the preliminary injunction would seriously interfere with FEMA's ability to fulfill its mission, and because FEMA is substantially likely to prevail on the merits in its appeal that it acted in compliance with the Stafford Act, the public interest would be well served by a stay of the preliminary injunction until FEMA's likely appeal is adjudicated.

---

[7]  Even if the Court believes that plaintiffs are entitled to additional notice with respect to the denials of their Section 408 applications, the Court should stay its Order except to the extent that it requires that the four named plaintiffs and the additional thirty-two ACORN members who have submitted declarations be provided "as soon as possible, more detailed explanations for the denials of evacuees' eligibility for housing assistance benefits under Section 408, including the factual and statutory basis for the denial and more fulsome instructions as to how each evacuee may either cure their ineligibility problem(s) or proceed with an appeal."  FEMA presumably could, if necessary, promptly review the files of those individuals.

Moreover, the Stafford Act places substantial discretion in FEMA's hands to permit the agency to adapt to a variety of disasters based upon the unique problems and challenges posed by each disaster depending on its nature (e.g., snowstorm, flooding, etc.), the number of people affected, the disaster's geographic scope, and the resources of state and local governments. Neither plaintiffs nor the Court are in a position to manage the government's response to disasters such as Hurricanes Katrina and Rita. Yet the preliminary injunction seeks to do just that, by mandating that FEMA provide ongoing and retroactive assistance under Section 403 to thousands of persons, despite the fact that FEMA decided to end the program months ago and Congress has expressly barred the Court from reviewing that decision. The danger of this is highlighted by plaintiffs' motion seeking an order requiring FEMA to submit a compliance plan as soon as possible. See Pls.' Mot. for Compliance Plan and Status Conf. [Docket No. 19]. Enabling FEMA to avoid this enormous diversion of resources until after FEMA's appeal is adjudicated is clearly in the public interest.

### V.    THE HARM TO FEMA IF A STAY IS NOT GRANTED OUTWEIGHS THE HARM TO PLAINTIFFS AS A RESULT OF THE REQUESTED STAY.

While plaintiffs claim, and the Court has found, that they face potential "irreparable harm" absent the entry of a preliminary injunction, that claim is at best limited to some of the plaintiffs, and cannot be generalized beyond them to every unsuccessful applicant for Section 408 assistance. With respect to the supposedly imminent and irreparable nature of the harm that plaintiffs claim they will suffer, it is worth noting the timing of events in this case. Defendant announced in March 2006 its plan to terminate the Section 403 Apartment Program, yet plaintiffs waited almost six months before filing suit, and until the day the termination was set to take

effect before seeking emergency injunctive relief.  The Court denied plaintiffs' TRO motion and, after hearing argument on plaintiffs' PI motion in September, waited more than two months to grant it.  This chronology does not suggest circumstances in which a stay pending appeal would result in irreparable harm.  Moreover, any potential harm to some undetermined number of named plaintiffs and others cannot outweigh the enormous financial and institutional harm to FEMA and to other current and future disaster victims who depend on FEMA for assistance that would result if a stay were denied.

**CONCLUSION**

For the reasons set forth above, the Court should stay its November 29 Order pending

defendant's appeal.  Alternatively, the Court should at a minimum stay its Order pending

defendant's appeal as to all persons other than those who are named parties to this action.

Dated: December 5, 2006                        Respectfully submitted,

                                               PETER D. KEISLER
                                               Assistant Attorney General

                                               JEFFREY A. TAYLOR
                                               United States Attorney


                                                 */s/ Christopher R. Hall*
_____
                                               MICHAEL SITCOV
                                               CHRISTOPHER HALL
                                               Trial Attorneys
                                               U.S. Department of Justice
                                               Civil Division
                                               Federal Programs Branch
                                               P.O. Box 883
                                               Washington, D.C.  20530

                                               (202) 514-4778