IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), *et al.* § § § § Plaintiffs, § § v. § § FEDERAL EMERGENCY MANAGEMENT § AGENCY (FEMA), § § Defendant. § | Civil Action No. 06-1521-RJL |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR A STAY PENDING APPEAL**

Plaintiffs oppose FEMA's Motion for a Stay Pending Appeal (Doc. 21) because it is based almost exclusively on arguments that this Court has already rejected, and the new arguments raised in the motion are unsupported by law or fact. In light of the immediate need for relief recognized by this Court (Doc. 18), plaintiffs will not revisit for a third time the matters already resolved. As to those matters, plaintiffs simply urge this Court not to reverse itself. Plaintiffs will consent to expedited consideration of FEMA's appeal by the U.S. Court of Appeals for the D.C. Circuit, where plaintiffs will argue that this Court's reasoning and conclusions are all grounded in settled law. Due to the urgent need for implementation of this Court's Preliminary Injunction, plaintiffs will focus only on the arguments raised for the first time in FEMA's motion for a stay.

Four factors guide the Court's consideration of whether to grant a stay pending appeal: (1) the likelihood that the moving party will prevail on the merits of its appeal; (2) the possibility of irreparable injury to the movant in the absence of a stay; (3) the possibility of substantial harm to other interested persons in the absence of a stay; and (4) the public interest in the matter. *Cuomo v.*

*NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985). None of these factors favors a stay in this case. FEMA presents no new arguments on the merits, and it fails to even attempt to distinguish this case from *Kapps v. Wing*, 404 F.3d 104, 123-24 (2d Cir. 2005); *Ortiz v. Hazel*, 794 F.2d 889, 892-94 (3d Cir. 1986); *Dilda v. Quern*, 612 F.2d 1055, 1057 (8th Cir. 1980); or *Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980); *See* Doc. 17 at 14. Thus, it is unlikely to prevail on appeal. FEMA overstates the injury that it may suffer in the absence of a stay, as discussed below. The record evidence fully supports this Court's conclusion that plaintiffs will face grave, irreparable harm in the absence of a stay, and governmental respect for the constitutional requirement of due process defines the public interest, as this Court and many others have already concluded.

**I.     This Court Properly Exercised its Jurisdiction to Award Retroactive and Prospective Injunctive Relief to Non-members of the Associational Plaintiff.**

FEMA argues that this Court lacks jurisdiction to order relief for anyone who is not named as a plaintiff, or who is not an ACORN member. But this Court has long exercised its jurisdiction to order just this form of relief, and it has done so with the blessing of the United States Supreme Court.

In one example a plaintiff association sought and won an injunction on behalf of its members and 73,000 affected people nationwide. *UAW v. Donovan*, 746 F.2d 839, 841-42 (D.C. Cir. 1984). The D.C. Circuit initially held that association had no standing to bring such a case, *id*. at 844, but the Supreme Court reversed. *UAW v. Brock*, 477 U.S. 274, 293 (1986). The *Brock* Court held that associational standing may be used to further an organization's goals and secure broad relief that is similar to what may be achieved in Rule 23 class-action proceedings. *UAW v. Brock*, 477 U.S. 274, 289-90 (1986).

On remand, the D.C. Circuit held that the association was entitled to an injunction that provides nationwide relief—relief that is both retroactive and prospective and includes payment of money by the government—for all people who were in the past, or who may be in the future, adversely affected by a government practice that violates federal law. *UAW v. Brock*, 816 F.2d 761, 768 (D.C. Cir. 1987) (DOL is ordered to "enforce [the] correct interpretation of the [federal statute] in pending and future cases, and consistent with state law, to correct any erroneous [benefit] determinations that may have occurred as a result of [DOL's] incorrect interpretation."). On remand from the D.C. Circuit, the district court then entered an injunction that is similar to the one issued in this case in every relevant respect. *See* Injunction issued June 30, 1987, in Civil Action No. 81-1954 (attached as Exhibit 1). DOL implemented the court order with a detailed plan that applied to every affected individual nationwide, without regard to whether the individual had ever been a UAW member. *See* Exhibit 2.

The cases cited by FEMA are not inconsistent with *Brock*. For example, in FEMA's lead case, *Lever Bros. Co. v. United States*, 981 F.3d 1330, 1338 (D.C. Cir. 1993), the Court accepted that a nationwide injunction may be appropriate, but simply examined the language of the complaint and concluded that the particular plaintiff in that case did not ask for a nationwide injunction.

ACORN exists to promote better housing and stable communities for everyone, not just its members. Doc. 17 n.1. Indeed, if ACORN worked solely or even primarily for its members' own benefit, this would contravene and possibly even undermine ACORN's organizational objectives. *Id*. The community organizing work that is at the core of ACORN's mission is, by definition, *harmed* by any suggestion that ACORN is not inclusive in its goals. This is why ACORN has standing to seek relief on behalf of all people affected by FEMA's unconstitutional acts, *see Brock*,

477 U.S. at 289, and it is why ACORN sought preliminary injunctive relief on behalf of all affected hurricane victims, including non-members. Complaint ¶¶ 55, 61, 63 (Doc. 1); Preliminary Injunction Hearing Transcript at 42 (Sept. 15, 2006).

Finally, as the Supreme Court recognized in *Brock*, where an association such as ACORN has shown the capacity to adequately litigate a case, unnecessary and artificial limits on the relief available in an associational standing case may only threaten judicial economy by inviting numerous duplicative lawsuits over the same issues across the nation. *See Brock*, 477 U.S. at 289.

For each of these reasons, this Court had jurisdiction to order relief for all disaster victims affected by the FEMA conduct that ACORN challenged as unconstitutional.

## II.     The Balance of Harms Weighs Decidedly in Plaintiffs' Favor.

FEMA asserts several new facts in arguing that it will be harmed if it must comply with this Court's Preliminary Injunction. FEMA's new alleged facts all concern money. At bottom, FEMA says that compliance will be too expensive. Meanwhile, FEMA ignores the harms faced by hurricane victims who lack secure housing, including sickness, suffering, interruption of school and work, and crime. Plaintiffs have not found a single case where a court has concluded that the risk of harm faced by those with basic survival needs is outweighed by the risk of harm to a public treasury. *See Goldberg v. Kelly*, 397 U.S. 254, 270 (1970) (affirming preliminary injunction to protect basic survival needs); *id.* at 272 n. 1 (Black, J., dissenting) (nine million people affected). FEMA cites none. Nor does FEMA say that it cannot afford to pay. It simply wishes not to pay. That has never and should not now outweigh the immediate risk of harm to hurricane victims.

When FEMA reports that this Court's injunction subjects FEMA to "enormous administrative and logistical difficulties in identifying evacuees . . . and communicating with them"

(Doc. 21 at 12), FEMA necessarily admits that many of the affected families are now homeless or in unstable situations that render them more difficult to reach than they were soon after the disasters from which they fled. *See also* Dannel Decl. II at ¶ 9 ("This would be very burdensome because many of these approximately 18,000 applicants are no longer tracked by FEMA. For many of the applicants, the last known address FEMA has is that of the disaster applicant's FEMA-funded shelter, and many no longer reside at that address, or even in its general vicinity."). Thus, after mistakenly rendering people homeless, FEMA now cites that very homelessness as a reason why FEMA should not be ordered to correct its mistakes. Similarly, FEMA complains throughout its motion that there has been no showing of how many people will ultimately be found to be eligible for Section 408 assistance once they receive adequate notice and an opportunity to appeal, *e.g.* Doc. 21 at 27, all the while missing the point that the notice and opportunity for appeal are constitutionally required precisely to facilitate fair determination of who is in fact eligible.

Moreover, in several ways, FEMA overstates the harm that it faces from this Court's preliminary injunction. FEMA invites this Court to consider the full cost of FEMA's immediate compliance with the entire injunction. This is not the correct approach for several reasons. First, the only costs that merit consideration are those that may be *improperly* assessed against FEMA under the injunction. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) ("When considering the harm to the parties flowing from the issuance or non-issuance of the requested preliminary injunction, the real issue for the Court's consideration is the level of harm resulting from the improper grant or denial of the petitioner's request."). In this way, plaintiffs' strong likelihood of success on the merits blunts FEMA's arguments on the balance of harms question. Also, because plaintiffs intend to cooperate in expediting appellate consideration of this case, FEMA cannot show

5

that it would have to spend 100% of the money necessary to comply with the injunction before appellate consideration of this case is completed.

Second, some of FEMA's facts are dubious because they are incomplete or insufficiently supported. For example, FEMA's new figure of 18,000 affected families is concededly "preliminary," and its relationship to FEMA's prior position that there are 11,000 affected families is unclear. FEMA says that it must incur the cost of calling every affected family three times before beginning public service announcements, even though public service announcements have proved effective in the past. If FEMA's goal is to reach families as cheaply and quickly as possible, FEMA could use public service announcements first. FEMA's own testimony establishes that its current computer system provides a field where the reasons for each ineligibility determination may be entered. FEMA claims that it has no guarantee of state and local cooperation in its compliance with this Court's order, as if it ever has had, sought, or needed any guarantee of such cooperation. Indeed the record shows the contrary: Houston in particular sought FEMA's assistance, and FEMA alone, not the local government, is the entity that refused to cooperate under Section 403. FEMA chose to end Section 403 against this Court's recommendation, so FEMA is not in a position to complain about the costs and complexities associated with compliance. Finally, FEMA has already proved that it has the administrative capacity to continue rental assistance to affected families cut-off from Section 403 and denied Section 408, because it did exactly that in order to moot the individual named plaintiffs' request for a temporary restraining order.

FEMA claims that about four employee hours would be needed to enable FEMA to give adequate notice explaining why it has determined each family to be ineligible for assistance. *See* Doc. 21 at 28. This number of hours—which is admittedly large—suggests that FEMA has not

6

recorded its reasons for its past ineligibility determinations. Such poor (indeed, nonexistent) record keeping would render those decisions arbitrary and capricious and subject to attack on grounds that extend well beyond the due process issues raised to date in this case. In any event, for present purposes, the point is that the government should not be allowed to hide behind its past administrative failures so as to complain of the cost of complying with this Court's Order. To countenance such an argument would encourage, rather than deter, violations of due process by administrators of governmental programs, including those meant to help those most in need.

For all of these reasons, FEMA has not proved, nor can it prove, that harm to it outweighs the harm faced by hurricane victims who would benefit by this Court's Preliminary Injunction.

## III. Conclusion

FEMA's motion for a stay pending appeal should be denied.

Respectfully submitted,

 /s/ Michael T. Kirkpatrick
Michael T. Kirkpatrick
   (DC Bar No. 486293)
   mkirkpatrick@citizen.org
Deepak Gupta
   (DC Bar No. 495451)
   dgupta@citizen.org
Brian Wolfman
   (DC Bar No. 427491)
   brian@citizen.org
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

                                         Robert W. Doggett
                                              (TX Bar No. 05945650)
                                                 rdoggett@trla.org
                                      Jerome W. Wesevich
                                              (TX Bar No. 21193250)
                                                jwesevich@trla.org
                                    Texas RioGrande Legal Aid, Inc.
                                    4920 North Interstate Highway 35
                                    Austin, Texas 78751
                                    (512) 374-2725
                                    (512) 447-3940 (fax)

Dated: December 7, 2006                  *Attorneys for Plaintiffs*