**U.S. Department of Labor**
Employment and Training Administration
Washington, D.C. 20210

| CLASSIFICATION |
| --- |
| UI/TRA |
| CORRESPONDENCE SYMBOL |
| TEUMI |
| DATE |
| November 17, 1987 |

DIRECTIVE :  UNEMPLOYMENT INSURANCE PROGRAM LETTER NO. 6-88

TO      :  ALL STATE EMPLOYMENT SECURITY AGENCIES

FROM    :  DONALD J. KULICK
           Administrator
           for Regional Management

SUBJECT :  Revised Definition of Employment for Trade
           Readjustment Allowances (TRA) Qualifying
           Purposes Applicable to Claims for Weeks of
           Unemployment Beginning Before October 1,
           1981

1.  Purpose.  To advise State Employment Security
Agencies (SESAs) of the revised interpretation of
Section 231 of the Trade Act of 1974 as required by
order of the United States District Court for the
District of Columbia concerning eligibility for TRA
for weeks beginning prior to October 1, 1981.

2.  References.  Section 231(2) of the Trade Act of
1974 as in effect before the 1981 amendments; United
States District Court for the District of Columbia,
Civil Action No. 81-1954, Order dated June 30, 1987;
United States Court of Appeals for the District of
Columbia Circuit, No. 83-2026, decision dated April 24,
1987; United States District Court for the District of
Columbia, Civil Action 81-1954, decision dated July
28, 1983 (568 F. Supp. 1047); and ET Handbook 315,
Part C, Page C-I-4.

3.  Background.  On July 28, 1983, the United States
District Court for the District of Columbia ruled in a
suit against the Department of Labor, brought by the
International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America (UAW), that
the phrase "weeks of employment" in Section 231(2) of
the Trade Act, given its ordinary meaning, includes
weeks in which a worker received a payment of workers'
compensation, disability pay, sickness or accident
pay, holiday pay, back pay or fringe benefits of at
least $30.

| RESCISSIONS | EXPIRATION DATE |
| --- | --- |
| | November 30, 1988 |
| DISTRIBUTION | |


EXHIBIT 2

Subsequently, the United States Court of Appeals for the
District of Columbia Circuit reversed the District Court
decision on the grounds that the UAW did not have standing
to file a class action on behalf of the TRA claimants in-
volved.  Further appeal to the United States Supreme Court
was made and that body ruled that the UAW did have standing
to file a class action on behalf of the TRA claimants in-
volved and the case was remanded back to the U.S. Court of
Appeals for the District of Columbia Circuit to rule on the
merits of the case.

On April 24, 1987, the Court of Appeals for the District of
Columbia Circuit affirmed the decision by the District Court
concerning the meaning of "weeks of employment" in Section
231(2) of the Trade Act, and the case was remanded to the
District Court with instructions that:

> [T]he District Court should direct the Secretary to pro-
> mulgate a new definition that comports with congression-
> al intent as found in the foregoing opinion, and then
> advise the state agencies of the correct interpretation
> of the statute.  The trial court should also direct the
> Secretary to order agency officials to take appropriate
> action to enforce this correct interpretation of the
> statute in pending and future cases, and, consistent
> with state law, to correct any erroneous eligibility
> determinations that may have occurred as a result of
> his incorrect interpretation.

On June 30, 1987, the District Court issued an Order with the
following directions:

> In accordance with the Court of Appeals' opinion, the Court
> hereby directs the Secretary to promulgate a new definition
> of section 231 of the Trade Act that comports with congres-
> sional intent as set forth in the opinion and to advise the
> state agencies of the correct interpretation of the statute.
> The Secretary is also directed to order agency officials to
> take appropriate action to enforce this correct interpreta-
> tion of the statute in pending and future cases, and, con-
> sistent with state law, to correct any erroneous eligibility
> determinations that may have occurred as a result of his
> incorrect interpretation.

ETATOPL 08717

- 3 -

This program letter sets forth the instructions which SESAs shall follow in carrying out the District Court's Order. These instructions are issued solely for this purpose, and shall not under any circumstances, be construed to apply, or be applied, with respect to entitlement to TRA <u>for any week which begins after September 30, 1981.</u>

4.  <u>Definitions of "Employment" and "Wages"</u>. Solely for the purposes of Section 231(2) of the Trade Act of 1974, prior to the amendment of such provision by Section 2503 of Public Law 97-35, and with respect to weeks of unemployment for TRA purposes which began before October 1, 1981, the terms "employment" and "wages" in Section 231(2) are defined as follows:

   1.  The term "employment" means any service performed for an employer by an individual for wages or by an officer of a corporation and also includes all periods for which the employment relationship continues and for which the individual receives a payment of workers' compensation, disability pay, sickness or accident pay, holiday pay, back pay or fringe benefits as a result of services performed for such employer.

   2.  The term "wages" means all compensation for employment from an employer including commissions, bonuses, the cash value of all compensation in a medium other than cash, workers' compensation, disability pay, sickness or accident pay, holiday pay, back pay, and fringe benefits.

To be a qualifying week for purposes of Section 231(2), the week must be a week of "employment" as defined above for which the gross "wages" as defined above equal or exceed the sum of $30.

These definitions of "employment" and "wages" are applicable solely to TRA claims for weeks of unemployment beginning on or after April 3, 1975 and through September 30, 1981.

5.  <u>Implementation</u>. For purposes of implementing the instructions in this program letter, the procedures under the State law for making determinations and redeterminations and appeal and review, shall be the same procedures as apply to claims for unemployment compensation under the State law, as required by 20 CFR Sections 617.51 and 617.52 and other provisions of the regulations.

)

ETATOPL 08718

- 4 -

a.  Pending Claims.  SESAs should make determinations on
any pending claims for the period at issue (April 3, 1975
through September 30, 1981) according to the definitions of
"employment" and "wages" in this program letter.  Any cases
pending in State court, or before a referee or appeal board,
shall be disposed of in a manner consistent with this pro-
gram letter and applicable State procedures.

b.  Denied Claims.  SESAs are to redetermine previously
denied claims for which appeals filing periods have ended
only to the extent that the applicable State law would
permit redeterminations for regular UI claims having the
same elapsed time periods as the TRA claims.  A survey made
of SESAs indicated that a majority of States could not make
redeterminations for the pre-October 1, 1981 period.
However, those States whose laws would permit it must do
so.  The provisions of State law should be the sole
criterion in determining whether SESAs have the authority
to make the redeterminations.  See 20 CFR Section 617.51(c).

SESAs which have the authority to make redeterminations in
accordance with State law shall search their records for TRA
claims denied because of insufficient weeks of employment,
and where weeks of unemployment may have occurred in the period
from April 3, 1975 through September 30, 1981.  If it is possi-
ble that the claimants would have 26 weeks of employment as
defined in this program letter, they shall be invited to file
claims if their current addresses can be determined.  News
releases may also be used to help identify eligible claimants.

To the extent redeterminations are authorized by State law,
SESAs shall make every effort to locate supporting records from
their files, employer, or other contacts, as provided in 29 CFR
91.8.  Verification shall be pursued - as provided in para. out
(d) of 29 CFR 91.8.  Unemployment and availability for work
also must be documented for each week claimed.

To the extent State laws do not allow the redetermination of
claims, SESAs should not solicit claims.  Neither should claims
be solicited beyond the limit set forth in each State's statu-
tory redetermination authority.  If any unallowable claims are
received, they would have to be denied in accordance with the
provisions of the State law; appealable determinations must be
issued in accordance with 20 CFR Sections 617.51 and 617.52.

ETATOPL 08719

- 5 -

The redeterminations shall be made applying the substantive
law and regulations (29 CFR Part 91) as in effect before the
1981 amendments to the Trade Act. For example, any UI payable
for the week is deducted from any TRA payable. The TRA weekly
amount shall be based on 70 percent of the individual's average
weekly wage not to exceed the average weekly manufacturing wage
(AWMW) determined by the Bureau of Labor Statistics for the
applicable period. Weekly amounts and duration shall be
computed in accordance with 29 CFR Section 91.11 and 91.12.
The following table shows the correct AWMW to use:

| on or after | and through | TRA will not exceed |
|---|---|---|
| March 20, 1981 | September 30, 1981 | $289 |
| March 20, 1980 | March 19, 1981 | $269 |
| March 22, 1979 | March 19, 1980 | $250 |
| March 24, 1978 | March 21, 1979 | $227 |
| March 17, 1977 | March 23, 1978 | $208 |
| March 20, 1976 | March 16, 1977 | $190 |
| April 3, 1975 | March 19, 1976 | $176 |

6.  Funding.  For reimbursement for the administrative costs of
these special redeterminations, an MPU of 130 will be allowed
for all subject SESAs.  The MPU for continued claims and
appeals that result from the redeterminations will be the same
as is currently allowed for TRA continued claims and appeals.
A separate UI-3 will be submitted to the appropriate Regional
Office.  Only section II of the form will be completed, and all
administrative costs will be reflected on part I of the regular
UI-3.  TRA benefit costs will be paid from "M" account PUBA
funds and must be requested in advance Attention: TSCA, and
written approval received before any funds are obligated.

7.  Reports.  The claims taken and paid should be reported on
the Form ETA 563, Monthly Determinations, Allowance Activities
and Reemployment Services under the Trade Act.  It is important
that the correct petition number be shown on the form 563 so
that these claims and payments can be identified as those
occurring because of the court order.

8.  Action Required.  SESA administrators should communicate
the content of this UIPL to appropriate staff, and implementa-
tion should be initiated and concluded as quickly as possible.

9.  Inquiries.  Direct questions to the appropriate Regional
Office.

ETATOPL 08720