# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), *et al.* | § § § | |
| | § | No. 06-5403 |
| *Plaintiffs-Appellees*, | § § | |
| v. | § § | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA), | § § § | |
| | § | |
| *Defendant-Appellant*. | § | |

## PLAINTIFFS-APPELLEES' OPPOSITION TO FEMA'S MOTION FOR STAY PENDING APPEAL

Michael T. Kirkpatrick
Deepak Gupta
Brian Wolfman
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

Robert W. Doggett
Jerome W. Wesevich
Texas RioGrande Legal Aid, Inc.
4920 North Interstate Highway 35
Austin, Texas 78751
(512) 374-2725
(512) 447-3940 (fax)

December 15, 2006                    *Attorneys for Plaintiffs-Appellees*

**INTRODUCTION**

On August 31, 2006, plaintiffs-appellees moved for a temporary restraining order (TRO) to stop the Federal Emergency Management Agency (FEMA) from terminating short-term housing assistance to several thousand families who fled Hurricanes Katrina and Rita.  Plaintiffs sought emergency relief because FEMA's policy was to continue short-term housing assistance until it determined each family's eligibility for longer-term assistance, and FEMA's failure to provide constitutionally adequate notice of its reasons for denying long-term assistance had prevented evacuees from effectively appealing FEMA's decisions.  The district court denied the motion for a TRO, converted it to a motion for preliminary injunction, and granted the motion on November 29, 2006.  FEMA seeks a stay pending appeal.

This Court should deny FEMA's request for a stay because FEMA has not made a strong showing that it is likely to prevail on the merits of its appeal, and because it overstates the harm that it will suffer from the injunction at issue.  FEMA's motion (at 1-2, 10-14, 17-19) relies heavily on its characterization of the preliminary injunction as a sweeping order with nationwide effect.  But the district court's order is much narrower than FEMA says.  Because FEMA's stay request contains "misinterpretations and mischaracterizations" of the district court's November 29 order, including "inaccuracies regarding the scope of the relief" that the order is intended to provide, the district court entered a substitution order.  *See* Substitution Order (Doc. 29), attached as Exhibit 1.  In response to an inquiry from the district court, FEMA now admits that there were 5,479 evacuee households still receiving short-term housing assistance on August 31, 2006, and that all of them were in Texas.  *See* Defendant's Response to the December 8, 2006 Order (Doc. 28).  Only those 5,479 families are covered by the order, not the 18,000 claimed by FEMA throughout its motion.

FEMA's stay request should also be denied because it would irreparably harm the plaintiffs—hurricane survivors whom the district court found to be in desperate need of injunctive relief. Because the housing program at issue is set to expire at the end of February 2007, a stay pending appeal could effectively end this case and deprive evacuees of long-overdue housing assistance. That pressing need, balanced against FEMA's unsupported claim of administrative inconvenience, weighs strongly in favor of denying FEMA's request.

Finally, the public interest militates against a stay. Denying a stay would uphold long-standing constitutional principles and promote improved procedures in the likely event that FEMA is called upon to respond to future disasters.

## BACKGROUND

Following the devastation of Hurricanes Katrina and Rita, and pursuant to disaster declarations by the President, FEMA provided housing assistance to "disaster victims" pursuant to § 403 of the Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), 42 U.S.C. § 5170b. District Court's Mem. Op. (Op.) at 3, Motion Att. C. Section 403 benefits are provided through local governments or other agencies, usually on a short-term basis. FEMA provided § 403 assistance for longer than usual because of the magnitude of the disasters.

In February 2006, FEMA announced that it would transition evacuees in the § 403 program to the long-term housing assistance program available under § 408 of the Stafford Act, 42 U.S.C. § 5174. FEMA provides housing assistance funds under § 408 through private contractors. Section 408 carries stricter eligibility requirements than § 403.[1] Although FEMA argues that §§ 403 and 408

---

[1] Individuals need only be "disaster victims" to be eligible for short-term housing assistance under § 403. To qualify for long-term housing assistance under § 408, disaster victims

2

"are distinct in all relevant respects," (Motion at 15), there is no dispute that FEMA administers the programs in tandem and that the Stafford Act has a unified purpose. *See* 42 U.S.C. § 5121 ("It is the intent of the Congress, by this Act, to provide an orderly and continuing means of assistance by the Federal Government to State and local governments in carrying out their responsibilities to alleviate the suffering and damage which result from . . . disasters."); FEMA Disaster Specific Guidance, *Conversion of Assistance—403 to 408* at 1-2 (Mar. 26, 2006) (Doc. 7, Exh. N).

And, indeed, they were operated in tandem in the wake of Katrina and Rita. FEMA decided to continue § 403 assistance pending determination of each evacuee's eligibility for § 408 assistance. *Id.*; *McWaters v. Federal Emergency Management Agency*, 436 F. Supp.2d 802, 824-25 (D. La. 2006) ("FEMA has stated that the agency has [decided to continue § 403 housing assistance] until two weeks after a participant receives either Section 408 housing assistance or a denial of such assistance."). As part of the transition process, FEMA treated each household in the § 403 program as an applicant for § 408, and FEMA's computer system determined each family's eligibility. Op. at 3; *see also* n.1, *supra.* If FEMA determined that an evacuee was ineligible for § 408 assistance, FEMA sent the evacuee a letter. *Id.* The letters did not include a description of the legal or factual basis for FEMA's decision. Rather, the § 408 ineligibility letters contained cryptic computer codes and phrases that failed to provide disaster survivors with the information necessary to determine how

---

must show that the damaged dwelling is the applicant's primary residence, the disaster rendered the damaged dwelling uninhabitable, the applicant is the head of household, at least one member of the household is a U.S. citizen or qualified alien, and insurance or another resource is not available to provide necessary housing assistance. 42 U.S.C. § 5174(b); 44 C.F.R. §§ 206.110(h) and 206.113(b). In this case, plaintiffs seek the factual and legal basis for FEMA's § 408 ineligibility determinations.

to correct any deficiencies in their applications, or whether to appeal the decision. Op. at 3-5 & nn. 4-5; Prelim. Inj. Exhs. 6-11 (Doc. 9).

The record is replete with descriptions of the confusion wrought by FEMA's § 408 ineligibility determination letters. Op. at 3-5; *see also* Plaintiffs' Reply in Supp. of Prelim. Inj. at 2-5 (Doc. 9); Plaintiffs' Mem. In Supp. of TRO at 3-6 (Doc. 3-1). FEMA frequently sent more than one letter to an evacuee containing contradictory codes or explanations. Op. at 4. Many evacuees called FEMA seeking explanations of FEMA's decisions, but received conflicting information because FEMA's own employees could not consistently interpret the codes used in FEMA's letters. *Id*. The district court found that FEMA's use of codes instead of an actual statement of the reasons for each decision results in notice that is unnecessarily vague and creates a significant risk that eligible families will be erroneously denied § 408 housing assistance. *Id*. at 14; *see also* Prelim. Inj. Exhs. 5-11 (Doc. 9).

The declarations quoted in the district court's opinion demonstrate that the lack of explanation for FEMA's § 408 ineligibility decisions created grave problems for evacuees and their advocates as they urged FEMA to reconsider its decisions. FEMA acknowledged that there were large-scale problems with its attempts to transition evacuees from § 403 to § 408. *E.g.* Dannels Decl. at ¶¶ 86-88 (Doc. 7-1); FEMA Letter, Complaint Exh. 4 (Doc. 1, Exh. 4). As a result, FEMA repeatedly extended the § 403 program. Op. at 5.

In late August 2006, FEMA announced that it would grant no further extensions of the § 403 program except for 113 households. FEMA did so despite a request that it again extend the § 403 program, and despite having prior notice of the constitutional defects in its § 408 ineligibility notices. Letter to FEMA (July 31, 2006) (Doc. 9, Exh. 5). Thus, on August 29, 2006, plaintiffs, four

4

individual hurricane survivors and a membership association that includes advocates for hurricane survivors, the Association of Community Organizations for Reform Now (ACORN), filed their Complaint for Declaratory and Injunctive Relief.  (Doc. 1.).

During the August 31, 2006, telephone hearing on plaintiffs' motion for a TRO, the district court warned FEMA not to discontinue § 403 assistance so that the *status quo* would be maintained while the district court considered entering a preliminary injunction, and the district court set a briefing schedule and hearing, which was completed by September 15, 2006.  Op. at 17-18.   FEMA ignored the district court's warning and terminated § 403 assistance for 5,479 families on August 31, 2006.   After extensive briefing and two hearings, the district court entered the preliminary injunction sought by plaintiffs, finding that the evacuees' basic survival needs were at stake and concluding that "each additional day plaintiffs go without assistance, they are harmed further," and "the necessary irreparable harm element is overwhelmingly established."  Op. at 17-18.

## ARGUMENT

In seeking a stay pending appeal, FEMA faces a high burden:

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.   (2) Has the petitioner shown that without such relief, it will be irreparably injured? ... (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? ... (4) Where lies the public interest?

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C. Cir. 1958)); Circuit Rule 8.  These factors weigh against granting FEMA's request because, as discussed

below, likelihood of success on appeal, ongoing irreparable harm to hurricane survivors, and the public interest strongly disfavor a stay.

## I.    FEMA IS UNLIKELY TO PREVAIL ON THE MERITS OF ITS APPEAL.

The district court entered the preliminary injunction after weighing the same four factors quoted above. *See Louisville & N. R. Co. v. Sullivan*, 617 F.2d 793, 799 (D.C. Cir. 1980). "A district court must balance the strengths of the requesting party's arguments in each of the four required areas. If the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotations omitted). In this case the district court concluded that all four factors strongly favor a preliminary injunction. This Court "review[s] the district court's weighing of the preliminary injunction factors under the abuse of discretion standard and its findings of fact under the clearly erroneous standard. To the extent the district court's decision hinges on questions of law, however, [the Court's] review is essentially de novo." *Al-Fayed v. CIA*, 254 F.3d 300, 303-04 (D.C. Cir. 2001). FEMA attempts to meet its burden of showing that the district court erred in weighing the preliminary injunction factors by arguing that it did not violate the constitutional rights of hurricane survivors, and even if it did violate their rights, the district court lacked authority to order the injunctive relief at issue. Neither argument has any basis in law or fact.

### A.    The District Court Correctly Concluded that Plaintiffs Demonstrated A Strong Likelihood of Success on Their Due Process Claim.

Over a half-century of Due Process precedent holds that government agencies must provide "timely and adequate notice detailing the reasons for" denial of government benefits, *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970)*,* and that "when notice is a person's due . . . [t]he means

6

employed must be such as one desirous of actually informing the [claimant] might reasonably adopt to accomplish it." *Jones v. Flowers*, 126 S.Ct. 1708, 1715 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

The district court concluded that plaintiffs demonstrated a strong likelihood of success on their claim that FEMA's § 408 ineligibility notice procedures do not satisfy Due Process. The court concluded that FEMA's notices are unnecessarily vague and confusing and that applicants could not "address, let alone appeal, decisions they cannot understand." Op. at 14. Accordingly, the court concluded that FEMA must provide more informative § 408 ineligibility notices "to (1) diminish the risk of erroneous deprivation, (2) restore the appellate review process to the valuable safeguard it was intended to be; and (3) free these evacuees from the 'Kafkaesque' application process they have had to endure." Op. at 16 (quoting *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 35 (D.C. Cir. 1997)).

## 1.    The District Court Correctly Found that Plaintiffs Possess a Property Interest in the Housing Benefits at Issue.

The district court held that "the evacuees here have a protectable property right in the housing assistance administered by FEMA, which cannot be deprived without due process of law. Op. at 12. The only other court to have decided this question also concluded that "by virtue of the automatic, non-discretionary nature of FEMA's provision of assistance as found in both practice and the Stafford Act and its implementing regulations"—under which all Hurricane Katrina and Rita evacuees who meet FEMA's objective eligibility criteria are provided section assistance—those evacuees "have a constitutionally protected property interest in receipt of housing assistance." *McWaters v. FEMA*, 436 F. Supp. 2d 802, 818 (E.D. La. 2006). FEMA argues (at 14-15) that both

7

courts are wrong because §§ 403 and 408 confer discretion upon FEMA as to whether and when to provide housing assistance to disaster victims.[2]

But the law is settled that if an agency *administers* a benefit as an entitlement pursuant to statutes and regulations, then the benefit *is* an entitlement. This is so even if the statute confers discretion upon the agency as to *whether* to administer the benefit as an entitlement. *Tarpeh-Doe v. U.S.*, 904 F.2d 719, 724 (D.C. Cir. 1990); *Colm v. Vance*, 567 F.2d 1125, 1128 (D.C. Cir. 1977). If eligibility alone means that an applicant will receive a benefit, then the benefit is an entitlement, but if the government retains discretion to choose which eligible applicants will receive a benefit, then the benefit is not an entitlement. *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997). To decide whether a benefit constitutes an entitlement, courts examine all rules or "understandings" that apply to the government's distribution of the benefit. *Washington Legal Clinic*, 107 F.3d at 36-38*; see also Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (property interest exists where rules and understandings "meaningfully channel[] official discretion by mandating a defined administrative outcome").

The district court correctly concluded that FEMA, by its own admission, consistently administers the housing assistance provisions of the Stafford Act as entitlements. *See* Doc. 9, Exh.

---

[2]FEMA invites this Court (at 15) to divide §§ 403 and 408 and analyze separately whether a property interest arises under either part of the Stafford Act. But FEMA administered §§ 403 and 408 in tandem so that evacuees had an expectation that they would continue to receive § 403 assistance until they were provided a full and fair opportunity to apply for § 408 assistance, including notice of the reasons for FEMA's § 408 ineligibility decisions. Numerous cases require that agencies transitioning public benefit recipients from one category to another related category of assistance do so in a manner that satisfies Due Process. *E.g. Youakim v. McDonald*, 71 F.3d 1274, 1291 (7th Cir. 1995); *Cosby v. Ward*, 843 F.2d 967, 984-85 (7th Cir. 1988); *Chu v. Noot*, 696 F.2d 594, 601-02 (7th Cir. 1982).

12 at 433:11 to 434:13 (Testimony of Donna Dannels, FEMA Acting Deputy Director of the

Recovery Division). FEMA succinctly admits: "If they are eligible, we will pay." *Id.* at 434:13.

FEMA does not use any subjective, discretionary factor in deciding who gets housing benefits. *Id*.

at 434:11-13; *McWaters*, 436 F.Supp.2d at 817 ("by FEMA's own admission, the agency has *no*

discretion regarding provision of Temporary Housing Assistance to eligible persons and families.").[3]

Thus, FEMA's actual treatment of housing assistance as an entitlement means that evacuees hold

much "more than a unilateral expectation" of receiving housing if they qualify. *Board of Regents*

*of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). By FEMA's own "understanding," evacuees

have a legitimate claim of entitlement to housing assistance if they qualify. *See McWaters,* 436 F.

Supp. 2d at 818 ("FEMA admits that all persons meeting the impartial eligibility criteria are entitled

to assistance, and all of them will receive it.").

Moreover, FEMA administers its disaster housing assistance programs without discretion as

to which eligible persons will receive benefits not only as a matter of official agency policy, *but*

*because that is what Congress directed it to do.* Once FEMA begins to provide assistance, "the

distribution of supplies, the processing of applications, and other relief and assistance activities shall

be accomplished in an equitable and impartial manner...." 42 U.S.C. § 5151(a). FEMA formally

requires all of its employees and agents to comply with this directive, 44 C.F.R. § 206.11, and

consequently acknowledges that following the declaration of a major disaster, FEMA "shall ... assist

---

[3]Indeed, 95% of § 408 eligibility determinations are made entirely by computer without any human interaction at all. Doc. 9, Exh. 12 (Dannels Testimony) at 318:1 to 326:15; *McWaters*, 436 F.Supp.2d at 818 ("[M]ost cases are *automatically* determined eligible or ineligible by the NEMIS computer system, requiring no human intervention or approval such that eligible applicants essentially 'automatically qualify' for assistance and are then automatically paid via either computer generated check or an electronic funds transfer.").

citizens and public officials in promptly obtaining assistance *to which they are entitled*." 44 C.F.R. § 206.42(5) (emphasis added). Congress not only requires FEMA to be impartial, but states numerous objective criteria that govern who is allowed to access housing assistance. *See* 42 U.S.C. § 5174); *see supra* at 2 n.1 (setting forth criteria). FEMA must create, publish and disseminate the elgibility criteria, 44 C.F.R. §§ 5.24-29, and must ensure an orderly and continuing means of assistance so that there are no gaps in assistance for evacuees who are eligible for continuing assistance. 42 U.S.C. § 5121(b); 44 C.F.R. § 206.2. All of this law and policy channels FEMA's discretion by requiring that those applicants who meet the eligibility criteria be provided with the assistance to which they are entitled, thereby creating a property interest that is protected by Due Process. *Kapps*, 404 F.3d at 113. No evidence or authority cited by FEMA suggests otherwise.

> ## 2. The District Court Correctly Applied *Matthews* to Conclude That FEMA's § 408 Ineligibility Letters Provide Insufficient Notice.

To determine the sufficiency of the notices at issue, the district court applied the balancing test announced in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and found that FEMA's § 408 ineligibility notices are constitutionally deficient because: (1) disaster victims' basic survival needs are at stake, creating the "highest" weight in favor of better notice; (2) FEMA's "vague and uninformative" § 408 ineligibility notices carry a serious risk of erroneous deprivation of benefits; and (3) FEMA's evidence of its interest in maintaining its § 408 ineligibility notice practices is itself "immeasurably vague" and "highly questionable." Op. at 13-17.

Numerous courts have applied *Matthews* and reached the identical conclusion—non-eligibility notices regarding government benefits must clearly apprise the recipient of the reasons for the decision, so that applicants may make informed decisions about whether to challenge that

decision.  *See Kapps*, 404 F.3d at 123-24 ("[N]otice of benefits determinations must provide claimants with enough information to understand the reasons for the agency's action.  [This] is a basic requirement of procedural due process.  Claimants cannot know whether a challenge to an agency's action is warranted, much less formulate an effective challenge, if they are not provided with sufficient information to understand the basis for the agency's action."); *Ortiz v. Hazel*, 794 F.2d 889, 892-93 (3d Cir. 1986) ("[N]otices [that] failed to explain the reason for [the agency's] action or to present calculations justifying that action" are constitutionally deficient; adequate "notice is necessary to protect claimants against proposed agency action resting on incorrect or misleading factual premises or on misapplication of rules to policies on the facts of particular cases").[4]

Conspicuously absent from FEMA's stay motion is any explanation of how its conduct can be consistent with the *Matthews* analysis and the cases cited above.  Significantly, FEMA has appears to have abandoned its previous claim that its § 408 ineligibility notices "clearly identified the basis for FEMA's determination."  *See* FEMA Opp. to Mtn. for Prelim. Inj. at 32-33 (Doc. 7). Instead, FEMA (at 15-16) accuses the district court of "disregard[ing] the importance of FEMA's administrative appeal process," "ignor[ing] undisputed evidence of extraordinary outreach efforts undertaken by FEMA," and "[g]iving little heed to the circumstances of the case and the gravity of the governmental interests at stake."  None of these vague attacks challenges the sufficiency or

---

[4]A related reason cited by several courts—and one that is particularly relevant here—is that agencies, without a detailed notice of the reasons for each agency denial of benefits, may switch their reasons for denying benefits and confound any attempt to ascertain the truth about each applicant's eligibility.  *See Grier v. Bloch*, 402 F. Supp. 2d 876, 935 (M.D. Tenn. 2005) ("[F]undamental due process requires that a person be informed in advance of the issues to be addressed at a hearing, ... and switching issues from those stated in the notice violates this basic principle."); *Ortiz v. Eichler*, 616 F. Supp. 1046, 1063 (D. Del. 1985) (same).

reliability of the evidence before the district court, the court's reasoning, or the authority upon which the district court relied.  Nor do they withstand scrutiny.

*First*, FEMA argues that the district court disregarded FEMA's administrative appeal process.  But the district court thoroughly discussed FEMA's appeals process in its *Mathews* analysis and concluded that FEMA's deficient notices prevented § 408 applicants from making informed decisions concerning whether to appeal.  Op. at 14-15.  Moreover, the court found that once applicants did appeal, the absence of a clear statement of FEMA's reasoning in each case resulted in confusion, including inconsistencies among explanations offered by FEMA's various agents.  Op. at 15-16.  FEMA emphasizes that it has reversed its own ineligibility decisions "thousands" of times, but the district court agreed with plaintiffs that this fact indicates only that FEMA's original ineligibility determinations were often inaccurate.  *Id*.  FEMA's point thus underscores that FEMA's unintelligible notices carry with them a high "risk of an erroneous derpivation."[5]

*Second*, FEMA's accusation that the district court ignored the magnitude of Hurricane Katrina falls flat.  The need for notice to evacuees was manageable by the time that FEMA decided to transition from § 403 to § 408 in February 2006, some six months after the hurricane.  And as FEMA admits, the timing of the transition was entirely within FEMA's discretion.  Thus, before beginning the transition, FEMA needed only to adopt procedures that would provide the reasons for

---

[5]*Lepre v. Dept. of Labor*, 275 F.3d 59, 71 (D.C. Cir. 2001), the only case that FEMA cites in support of its argument, is inapposite.  *Lepre* only concerns the sufficiency of notice by mail, not the adequacy of the content of the notice.  The court observed in *dicta* that if the notice had been lost in the mail, due process would still have been satisfied because of post-deprivation procedures.  *Id*. at 70-71.  *Lepre* did not hold that inadequate notice procedures may be cured by a post-deprivation hearing or appeal process.  Such a holding would be particularly nonsensical here, where the inadequacy of the notice procedures severely undermined the efficacy of the subsequent appeals process.

any § 408 ineligibility decisions.  The cost of documenting FEMA's initial reasons, and providing

that documentation to § 408 applicants, is all that merits consideration under the third *Matthews*

factor, and that is all the district court considered.  Op. at 16-17.

    **B.**    **The District Court Narrowly Tailored its Injunction to Remedy the Harm that Resulted from FEMA's Unconstitutional Actions.**

This Court has "long held that an injunction must be narrowly tailored to remedy the specific

harm shown."  *Nebraska HHS v. HHS*, 435 F.3d 326, 330 (D.C. Cir. 2006).  But "narrowly tailored"

does not mean limited.  Indeed, where proper parties seek broad injunctive relief, and prove that it

is necessary to remedy specific harm, broad injunctive relief is upheld as narrowly tailored.  *E.g.*

*Califano v. Yamasaki*, 442 U.S. 682, 701-02 (1979); *Nat'l Treasury Employees Union v. Yeutter*, 918

F.2d 968, 977 (D.C. Cir. 1990); *Yolton v. El Paso Tennessee Pipeline Co.*, 318 F. Supp. 2d 455, 473

(D. Mich. 2003).

Here, Plaintiffs explicitly sought, proved their standing to seek, and demonstrated the basis

and need for an injunction that applies to many families and secures significant benefits for them.

But the injunction is also narrowly tailored in that its only effect is to return the affected individuals

to the *status quo* as of August 31, 2006, the date when FEMA chose to ignore the district court's

explicit warning that if FEMA chose to change the *status quo* on that date, it would have to fix the

resulting mess if its conduct were later found unconstitutional.  The injunction is also narrowly

tailored in that it only requires FEMA to follow its own plans for converting from § 403 to § 408,

by maintaining § 403 assistance until adequate procedures for determining § 408 eligibility are

implemented.

Still, FEMA's motion exaggerates the scope of the district court's order as a "sweeping injunction" that "extends to all of the approximately 18,000 evacuees of Hurricaes Katrina and Rita who unsuccessfully sought § 408 benefits." Motion at 1-2; *see id.* at 8, 10-14, 17 (asserting, without support, that compliance with the order would cost "as much as $87 million"). The district court's order does nothing of the sort. To the contrary, the district court granted narrowly-drawn injunctive relief designed to preserve the status quo *only* for those evacuees who were receiving § 403 assistance benefits on August 31, 2006. Exh. 1, attached. FEMA now estimates that there were 5,479 such evacuees and that they were all in Texas. *See* Defendant's Response to the December 8, 2006 Order (Doc. 28). FEMA's other scope-of-relief arguments are just as meritless.

## 1. District Courts May Enter Injunctions that Benefit Non-Parties.

FEMA argues (at 11) that the district court's injunction is invalid because it may benefit people who are not parties to this litigation—presumably a subset of the approximately 5,479 evacuees living in Texas whose § 403 benefits were terminated on August 31, 2006, but who were not members of ACORN. But FEMA cites *no* case holding an injunction invalid on those grounds, and, in fact, the cases cited by FEMA confirm that no such rule exists. In *Easyriders Freedom FIGHT v. Hannigan*, for example, the court *affirmed* just such a non-party-benefit injunction. 92 F.3d 1486, 1502 (9th Cir. 1996) ("an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action"). *Easyriders* confirms that associational standing can serve as the basis for securing broad injunctive relief that extends even beyond the association's membership. *Id.* ("While there are only fourteen named plaintiffs in this case . . . and an unknown number of members of Easyriders, an injunction against [agency practices] statewide is appropriate."); *see also Bresgal v. Brock*, 843 F.2d

14

1163, 1171 (9th Cir. 1987) ("Class-wide [injunctive] relief may be appropriate [against a federal agency found to violate federal law] even in an individual action.").[6]

This Court, too, has not only affirmed, *but itself ordered*, injunctive relief that benefits non-parties.  In *UAW v. Brock*, an association won an injunction against the Department of Labor on behalf of an estimated 73,000 benefit applicants nationwide, including non-members.  *See UAW v. Donovan*, 746 F.2d 839, 841-42 (D.C. Cir. 1984), *rev'd sub nom. UAW v. Brock*, 477 U.S. 274 (1986).  In that case, the Supreme Court held that associational standing may be used to further an organization's goals and secure broad relief that is similar to what may be achieved in a class action. 477 U.S. at 288-290 (rejecting government's position that "members of an association who wish to litigate common questions of law or fact against the same defendant be permitted to proceed only" in a class action).  On remand, this Court held that the association was entitled to an injunction providing nationwide relief—including payment of benefits—for all people who were in the past, or who might in the future, be adversely affected by the government practice found to violate federal law.  *UAW v. Brock*, 816 F.2d 761, 768 (D.C. Cir. 1987).  The Department of Labor then implemented a plan that extended benefits to every affected individual nationwide, without regard to whether the individual was a member of the plaintiff association.  *See* Doc. 25, Exh. 2.

---

[6]None of the other cases cited by FEMA support its argument.  In *Lever Bros. Co. v. United States*, 981 F.3d 1330, 1338 (D.C. Cir. 1993), this Court assumed that non-party injunctions may be appropriate in some cases and held only that the complaint in that case—a trademark suit brought by a single business—did not request relief that extended to others.  Nor does anything in the one-pargraph order in *Dep't of Defense v. Meinhold*, 510 U.S. 939 (1993), suggest that district courts lack the authority to enter injunctive relief that benefits non-parties as a general matter.  Finally, *Heckler v. Lopez*, 463 U.S. 1328 (1983), did not involve relief to non-parties at all; the only beneficiaries of the injunction at issue in that case were class members.  *Id*. at 1329.

FEMA (at 12 n.3, 12-13) seeks to distinguish *Brock* and similar cases, and challenge ACORN's standing, on the ground that those cases involved a "challenge to a regulation or a generally-applicable eligibility requirement," while this case involves purely "individual" issues. But the legal issues and the relief ordered here are just as generally applicable. Here, as in *Brock*, "[t]he suit raises a pure question of law" and "the relief requested, and granted by the District Court, leaves any questions regarding the eligibility of individual [§ 408] claimants" to the appropriate officials. 477 U.S. at 287. "Thus, though the unique facts of each [ACORN] member's claim will have to be considered by the proper [FEMA officials] before any member will be able to receive the benefits allegedly due him," ACORN properly "litigate[d] this case without the participation of those individual claimants ...." *Id.*

## 2. Discretion Does Not Render the Injunction Overbroad.

FEMA next argues (at 13) that the district court lacked authority to order FEMA to reinstate § 403 housing assistance because § 403 commits the decision of when and whether to provide assistance to FEMA's discretion. This argument obscures the fact that during the entire time that the constitutional violations occurred and plaintiffs sought injunctive relief, FEMA had exercised its discretion to provide § 403 assistance to all Katrina and Rita survivors who sought that assistance, at least until FEMA made a final determination as to § 408 eligibility. Two courts have so found. Op. at 12; *McWaters*, 436 F. Supp. 2d at 825. The district court's order remains narrowly tailored because it returns affected families to the *status quo* at the time that FEMA had provided § 403 housing assistance, and was explicitly warned not to stop doing so. Op. at 6.

The only authority that FEMA cites for its § 403 discretion argument is 5 U.S.C. § 701, but that statute has only been applied to limit which agency actions are subject to judicial review. *E.g.*

*Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003). FEMA cites no authority, and plaintiffs can find none, suggesting that § 701 limits what *remedies* federal courts may enter after concluding that an agency has violated federal law. Now-Justice Breyer refused to read § 701 as placing limits on the traditional equitable remedies available to correct agency violations of federal law. *See NAACP v. HUD*, 817 F.2d 149, 160-61 (1st Cir. 1987) (citing *Indiana & Michigan Electric Co. v. FPC*, 502 F.2d 336, 346 (D.C. Cir. 1974) ("While the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.")); *see also Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) (Congress must use "clear expression" to curb judicial discretion over the scope of injunctive relief available in federal court). The only other authority cited by FEMA in support of its argument is *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66-67 (2004), but *Norton* addresses the quite different question of when agency *inaction* is reviewable under 5 U.S.C. § 706(1).

### 3. The District Court's Order Does Not Require Violation of § 403.

Next, FEMA argues (at 3, 14) that the district court's order is so broad that it intrudes on Congress's territory by requiring FEMA provide § 403 housing assistance directly to individuals in violation of § 403 itself. The order does no such thing. It requires only that FEMA "immediately restore Section 403 short-term housing assistance benefits to all of those evacuees in Texas who, as of August 31, 2006 were receiving Section 403 housing assistance[.]" Exh. 1 at 2. The order does not direct how FEMA is to restore this assistance. FEMA may comply with both the injunction and the statute by paying individuals through a local agency listed in § 403. *See* 42 U.S.C. § 5170b(a)(1)-(2).

17

### 4.  Actual § 408 Eligibility Cannot Be Required for Relief.

Finally, FEMA repeatedly asserts (at 2, 3, 9, 10) that the injunction is overbroad because it provides relief to people who have not been shown to be eligible under § 408.  FEMA's assertion has no basis.  "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.  It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake."  *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972).  Moreover, the injunction only continues § 403 assistance while the substantive outcome under § 408 is determined in accord with Due Process.

## II.  THE BALANCE OF HARMS AND THE PUBLIC INTEREST STRONGLY MILITATE AGAINST A STAY PENDING APPEAL.

The district court found that the evacuees are already suffering irreparable harm and that the court must use its injunctive powers "to stop and reverse the harm," because "each additional day plaintiffs go without assistance, they are harmed further."  Op. 17-18; *see also id.* at 13 ("[T]he Supreme Court itself has explained that where the discontinuation of benefits would 'deprive an eligible recipient of the very means by which to live while he waits' for reconsideration, the private interest at stake is highest.") (quoting *Mathews*, 424 U.S. at 340-41).

Indeed, at issue in this case is one of the most fundamental concerns for any human being—whether they and their families will have a roof over their heads.  Every day that the evacuees are left without secure housing the harm continues.  "These plaintiffs suffer irreparably if they must live in inadequate, often health endangering housing for *any* period of time as a

18

consequence of" FEMA's inadequate procedures. *See Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 789 (11th Cir. 1984).

Although this Court requires that a motion for stay "discuss ... with specificity the possibility of harm to other parties if relief is granted," Circuit Rule 8, FEMA does not attempt to argue that evacuees who are cut-off from § 403 and denied § 408 do not suffer grave harm; indeed, FEMA acknowledges that "[t]he hardships experienced by Katrina victims are unquestioned." Motion at 4. Rather, FEMA claims that the balance of harms favors the agency because it would be an "administrative nightmare" to comply with the district court's order. *Id.* at 17. FEMA's claim is wrong because, as the district court has made clear, FEMA bases its claims on fundamental "misinterpretations and mischaracterizations" of the district court's order. Substitution Order (Doc. 29) attached as Exh. 1.

*First*, FEMA errs by claiming that the order requires it to "reconstitute" a discontinued § 403 program for "almost 18,000 applicants" at a cost of "$87 million." Motion at 17. There are only 5,479 evacuee households covered by the order, and they are all in Texas. Moreover, the order requires restoration of "Section 403 short-term housing assistance benefits," not the resurrection of any particular program. Section 403 is flexible and designed to allow for the fast provision of emergency housing assistance following a disaster. Because of § 403's inherent flexibility, there are many ways that FEMA could structure compliance without resurrecting any particular program.

*Second*, FEMA wrongly claims that "requiring FEMA to redo almost 18,000 eligibility determinations" to meet constitutional standards would require tens of thousands of employee-hours. Only 5,479 determinations must be explained. Because the determinations have already been made

19

and, presumably, the files contain the factual and legal basis for each, FEMA need only cut and paste its reasons into a new letter to the evacuees.

*Third*, FEMA's claim that the order requires FEMA to "provide housing assistance and payment to thousands of persons who have not demonstrated eligibility to receive the assistance" (Motion at 18), puts the cart before the horse. The record demonstrates that FEMA provided disaster survivors with constitutionally deficient notice of FEMA's § 408 eligibility decisions, and the district court found that FEMA's notices were so deficient that they carried an unjustifiable risk that FEMA erroneously denied § 408 assistance. All of the evacuees covered by the order were receiving § 403 when this case was filed, and it was FEMA's policy to continue such assistance to all evacuee families pending the outcome of any appeal. Thus, the district court's order requires FEMA to do nothing more than follow its own policy of providing § 403 assistance until it decides, after constitutional notice and an opportunity to appeal, whether each evacuee household qualifies for § 408 assistance.

Although FEMA complains of the burden in complying with the district court's order pending appeal, it ignores the fact that a stay will sound the death knell of this case. Absent an extension, eligibility for § 408 benefits is limited to the first eighteen months after the disaster. *See* 42 U.S.C. § 5174(c)(1)(B)(ii). Thus, the § 408 housing assistance program for Hurricane Katrina evacuees is slated to end in little more than two months.

Finally, the public interest favors governmental compliance with constitutional requirements. *See O'Donnell Const. Co. v. District of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992).

## CONCLUSION

Defendant-appellant FEMA's motion for a stay pending appeal should be denied.

Respectfully submitted,

_____

Michael T. Kirkpatrick
Deepak Gupta
Brian Wolfman
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

Robert W. Doggett
Jerome W. Wesevich
Texas RioGrande Legal Aid, Inc.
4920 North Interstate Highway 35
Austin, Texas 78751
(512) 374-2725
(512) 447-3940 (fax)

December 15, 2006                    *Attorneys for Plaintiffs-Appellees*

## CERTIFICATE RULE 26.1

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, counsel certifies that Plaintiff-Appellee Association of Community Organizations for Reform Now (ACORN) is a non-profit association.  ACORN has no parent companies, has issued no shares or debt securities, and no publicly held company has an ownership interest in ACORN.

The district court's Memorandum Opinion at issue in this appeal accurately states ACORN's general nature and purpose, insofar as relevant to this litigation.  *See* Op. at 1 & n.1; *id*. at 8-10 & n.9 (Doc. 17), filed as Exhibit C to FEMA's Motion for Stay filed December 11, 2006.

_____

Michael T. Kirkpatrick

**CERTIFICATE OF SERVICE**

I certify that on December 15, 2006, a true and correct copy of Plaintiff-Appellees' Opposition to FEMA's Motion for Stay Pending Appeal was sent by electronic mail to the following counsel of record in this case:

Mark B. Stern                             Dana J. Martin
U.S. Department of Justice                U.S. Department of Justice
Civil Division                            Civil Division
Appellate Staff, Room 7246                Appellate Staff, Room 7246
950 Pennsylvania Avenue, NW               950 Pennsylvania Avenue, NW
Washington, DC 20530-0001                 Washington, DC 20530-0001
mark.stern@usdoj.gov                      dana.martin@usdoj.gov


_____
Michael T. Kirkpatrick