IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), *et al.* § § § § Plaintiffs, § § v. § § FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA), § § § Defendant. § | Civil Action No. 06-1521-RJL |

**MEMORANDUM DESCRIBING FEMA'S OPTIONS FOR
PAYING SEPTEMBER–NOVEMBER HOUSING ASSISTANCE**

On November 29, 2006, this Court ordered FEMA to "pay [certain] evacuees the short-term housing assistance they would otherwise have received from September 1, 2006, through November 30, 2006." Order at 2 (Doc. 18). On December 18, 2006, Margaret Young, FEMA's Chief Financial Officer, testified that FEMA cannot comply with this portion of the Order because (1) she reads the Order to require that payments be made only under the authority of Section 403; (2) she reads the Order to require that payments be made directly from FEMA to evacuees; and (3) she reads Section 403 itself to prohibit FEMA from making direct payments to evacuees. FEMA has provided no other reason why it cannot comply with this Court's Order.[1]

---

[1] Ms. Young admitted that FEMA has the money to make the payments required by the Order and that Congress has just appropriated $1.5 billion for FEMA's Disaster Relief Fund, but testified that complying with the Order would inconvenience FEMA because it might require FEMA to request additional money from Congress sooner than would otherwise be necessary. FEMA claims that complying with the Order would cost about $10 million, or 0.6% of the $1.5 billion appropriation. FEMA also admits that only future disasters will determine whether it would be required to use the entire FY 2007 appropriation for the Disaster Relief Fund, and that if FEMA does so, it may request a supplemental appropriation. FEMA does not estimate what impact, if any, compliance with the Order may have on the timing of any such request.

FEMA's justifications for noncompliance are unavailing. FEMA can comply with the Order in any of the following ways.

**1.      FEMA Need Not Rely on Section 403 as Its Authority for Paying Evacuees.**

The Order only requires FEMA to pay the benefits that evacuees would have received under Section 403 during September, October, and November had FEMA heeded the Court's warning not to terminate Section 403 housing assistance. The Order sets the *amount* due each evacuee household as the Section 403 benefit amount times three months, but the Order does not specify what authority or method FEMA must use to comply. Assuming that FEMA is somehow prevented from complying under Section 403 itself, FEMA must still explain why it cannot comply with the Order under 42 U.S.C. § 5192(a)(8) (Section 502) or under 42 U.S.C. § 5174 (Section 408). Indeed, Ms. Young acknowledged that in response to Hurricane Katrina, FEMA directly awarded $2,000 in "Expedited Assistance" and $2,358 in "Transitional Housing Assistance" to evacuees under Section 408—without determining their eligibility for Section 408 benefits in advance, and before the creation of the Section 403 Apartment program.[2]

Thus, based on FEMA's own past practices, it could efficiently comply with the Order and Section 408 by creating a "Special Housing Assistance" program under Section 408. Benefits could be distributed either directly by the U.S. Department of the Treasury or by authorizing FEMA's nationwide contractor, Corporate Lodging Consultants (CLC), to issue the payments. Indeed, the General Services Administration already has a Blanket Purchase

---

[2] "The expedited assistance being made available to individuals will only be a portion of the total assistance many people may need, and *normal eligibility determinations* will result in subsequent payments of assistance in the future." FEMA Release, Sept. 7, 2005, HQ-05-218 (emphasis added). *See also* "Transitional Housing Assistance Program," http://www.fema.gov/hazard/hurricane/2005katrina/katrinatranshousing.shtm.

Agreement (BPA) with CLC and need only issue a task order for that purpose under the BPA. Under both scenarios, FEMA would be able to deliver benefits to all evacuees covered by the Court's Order—even those who are no longer in Texas.

**2.      FEMA May Pay Evacuees Through the Intermediaries Listed In Section 403.**

An alternative avenue by which FEMA may comply with the Order is to pay the amount required by the Order to one of the intermediaries listed in Section 403, and allow one of the intermediaries to pay the evacuees. *See* 42 U.S.C. § 5170b(a)(2) (listing intermediaries); 44 C.F.R. § 206.12(a) ("with their consent," FEMA may use intermediary facilities and personnel to distribute benefits). Employing intermediaries—state and local governments or non-profit organizations such as the American Red Cross—would remove FEMA's only objection to relying on Section 403 as its statutory authorization for complying with the Order. FEMA's only stated reason for not doing so is that it reads the Order to require direct payments rather than indirect ones. Although Plaintiffs do not read the Court's Order to so restrict the means by which FEMA may choose to comply, Plaintiffs have no objection if the Court chooses to clarify its Order to specify that FEMA may make the required payments directly or indirectly as necessary to comply with the statute. As FEMA acknowledged at the Monday hearing, using intermediaries is consistent with FEMA's past practice. FEMA has, for instance, already distributed emergency financial assistance to Katrina evacuees through the American Red Cross. *See* Robert Johnson Letter (Dec. 15, 2006).

**3.      FEMA May Directly Pay Evacuees Under Section 403.**

Even if FEMA is correct that it can only rely on its Section 403 authority to carry out the Court's Order *and* that it cannot employ intermediaries as the statute provides, FEMA may still

pay evacuees directly under Section 403. FEMA's claim that it has no statutory authority to do so is belied by FEMA's own regulation, which allows FEMA to do just that. *See* 44 C.F.R. § 206.208 (permitting "[d]irect federal assistance" under "section[] 403 . . . of the Act" upon the application of a state or local government). Accordingly, the interpretation of Section 403 put forth in Ms. Young's testimony is entitled to no deference. *Smiley v. Citibank*, 517 U.S. 735, 741 (1996) ("[W]e deny deference to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice. The deliberateness of such positions, if not indeed their authoritativeness, is suspect.") (quotation omitted). To be clear, Plaintiffs are not suggesting that FEMA must act pursuant to 44 C.F.R. § 206.208 to comply with the Court's Order; rather, 44 C.F.R. § 206.208 demonstrates that nothing in Section 403 of the Stafford Act precludes direct federal assistance.

    For all of these reasons, FEMA can comply with this Court's Order. FEMA has the money, and it has ample statutory and regulatory bases for spending that money.

                        Respectfully submitted,

                        */s/ Michael Kirkpatrick*

                        _____
                        Michael T. Kirkpatrick
                            (DC Bar No. 486293)
                            mkirkpatrick@citizen.org
                        Deepak Gupta
                            (DC Bar No. 495451)
                            dgupta@citizen.org
                        Brian Wolfman
                            (DC Bar No. 427491)
                            brian@citizen.org
                        Public Citizen Litigation Group
                        1600 20th Street, N.W.
                        Washington, DC 20009
                        (202) 588-1000

                                                  (202) 588-7795 (fax)

Robert W. Doggett
    (TX Bar No. 05945650)
    rdoggett@trla.org
Jerome W. Wesevich
    (TX Bar No. 21193250)
    jwesevich@trla.org
Texas RioGrande Legal Aid, Inc.
4920 North Interstate Highway 35
Austin, Texas 78751
(512) 374-2725
(512) 447-3940 (fax)

December 20, 2006                    *Attorneys for Plaintiffs*