

# CITY OF HOUSTON
Hurricane Housing Task Force

**Bill White**
Mayor

P.O. Box 368
Houston, Texas 77001-0368
City Hall Annex
900 Bagby, 3rd Floor

T. 713.437.6745
F. 713.247.1017
www.HoustonHurricaneRecovery.org

December 20, 2006

Mr. Butch Smith
Director, Texas Transitional Recovery Office
Federal Emergency Management Agency
9001 I-35 North, Suite 100
Austin, Texas  78753                              via email butch.smith@dhs.gov

RE:   *ACORN v. FEMA*, Comments on draft Disaster Specific Guidance: Special Section 403 Interim Sheltering Program

Dear Mr. Smith:

Thank you for permitting the City of Houston (Houston) to review and provide comments on FEMA's draft Disaster Specific Guidance (DSG): Special Section 403 Interim Sheltering Program.

<u>FEMA Should Contract with CLC to Pay Rent</u>.  As stated in my earlier letter dated December 15, 2006, to Mr. Robert Doggett (you were provided a copy), Houston believes that the most efficient way to provide an extension of housing assistance for the 403 evacuee population is for Corporate Lodging Consultants (CLC) to be engaged directly by FEMA to deliver the apartment payment service.  This is their business, and they are much more efficient at paying landlords than was Houston.   A direct contract by FEMA with CLC will save taxpayers' monies.

In addition, it will be much easier to get landlords to agree to participate in a program with CLC as the payment agent.  Mr. Andy Teas, Vice President of Public Affairs for the Houston Apartment Association, in commenting on the proposal for the Houston to pay its landlords stated:  "I can't imagine many owners choosing to sign up for a two-month, no-security-deposit deal, especially if they have to invoice the city for payment and wait weeks or months to get it."  Using CLC will minimize confusion for the landlords, as most are already familiar with CLC operations for the 408-population.  Additionally, CLC can perform this service throughout Texas or the United States, regardless of where the evacuee now resides.

<u>Houston Requests FEMA to Provide Direct Federal Assistance</u>.  If FEMA interprets Section 403 of the Stafford Act as barring FEMA from contracting directly with CLC to administer the payment program, we believe that 44 C.F.R. § 206.208 provides the

December 20, 2006 page 2
Mr. Butch Smith

authority for Houston and/or the State of Texas to request FEMA to accomplish that work under Section 403. "When the State and local government lack the capability to perform or to contract for eligible emergency work and/or debris removal, under sections 402(4), 403 or 407 of the Act, the Grantee may request that the work be accomplished by a Federal agency." 44 C.F.R. § 206.208 (a). Houston does not have the capability to process the apartment payments, and would have to hire a contractor to accomplish that process. If a contractor must be hired, it make much more sense for FEMA to ask CLC, a company already doing the same business for FEMA, to process the additional apartment payments.

Additionally, the draft DSG recites its authority is under Section 502 of the Stafford Act. That section authorizes Federal agencies to provide emergency assistance. 42 U.S.C. § 5192(a)(4) (Stafford Act 502(a)(4)). This is independent authority by which FEMA may contract directly with CLC for the apartment payment function.

FEMA Should Not Ask Local Taxpayers to Fund FEMA's Compliance. The draft DSG assumes local taxpayers will fund the costs of FEMA's compliance with the Court's Order. The initial paragraph of section VI, and paragraphs VI.C. and VI.D.5 each provides that FEMA will *reimburse* reasonable or eligible costs. This is an unfair burden to ask Houston, Austin, San Antonio and Ark-Tex COG to have to advance their local taxpayers' monies and await reimbursement of costs through a project worksheet process. The hurricanes did not happen in those cities—they are only *host jurisdictions*. The time from expenditure of funds to reimbursement can last many months.

If FEMA wants local jurisdictions to administer all aspects of the Court's Order, FEMA should deliver to the cities, before December 22, an amount equal to the estimated rent, utilities, and program management costs for three months ($2,500) multiplied by the number of 403 eligible persons in that city. The cities could then "true-up" with FEMA after March 31, 2007.

Utility Costs Should Be Paid to Evacuees as a Fixed Monthly Stipend. The draft DSG requests that State or local governments issue utility payments to utility providers. It will be extremely inefficient to require that evacuees take service out of their name, place service in Houston's name for three months, and then have service then taken out of Houston's account. This would require CenterPoint (our local electrical distribution company) to make an out-of-cycle meter read at the start and end of 403-subsidy period for about 3,500 accounts. This will also cause many evacuees to suffer early termination penalties if they have entered into a long-term contract with their electricity provider. After three months, those same evacuees will then need to reestablish service in their name, and perhaps have to make new utility deposits, which are typically equivalent to two-months billing. Few if any benefits would be realized from having the local governments pay to the provider the utilities for a short three-month period; indeed, there are disadvantages to the evacuee, the electrical distribution company, the electricity provider, and overhead costs to the local government that are passed on to FEMA.

December 20, 2006                                                                                                page 3
Mr. Butch Smith

The average electric utility costs for evacuees in Houston's program in January, February and March 2006 were $103.87, $92.00 and $109.67. Given the short 3-month indicated duration of the Special Section 403 Interim Sheltering Program, Houston recommends that each evacuee be paid a stipend of $100.00 per month for their utility expense. This will have the lowest administrative costs, and because the evacuee will be responsible for their bill, they will have the incentive to control their usage and costs.

<u>Duration of Program</u>. The DSG indicates that the "program will be in effect from December 22, 2006 to March 31, 2007. " The Court's Order of November 29, 2006, provides that housing assistance is to commence immediately, and that FEMA is to pay evacuees the housing assistance benefits they would have received from September 1, 2006 through November 30, 2006. The draft DSG does not address what assistance FEMA will provide for the period of December 1 until the evacuee's rent is again paid for by FEMA.

<u>Payments to Evacuees</u>. The draft DSG does not discuss how FEMA would make the retroactive (September through November) rent payments to evacuees. FEMA is experienced in making direct payments to hurricane victims, and should be able to make both the retroactive payments and the utility stipends directly to evacuees. However, if FEMA wants another entity to make those payments, Houston would suggest that a local non-profit relief and disaster assistance organization, as authorized under Section 403(a)(2) of the Stafford Act, be engaged to administer such payments. Having a local disaster relief agency assist in the payment distribution process would have the benefit of facilitating an introduction of the evacuee to caseworkers, who can connect the evacuee with job training or job search agencies or other social services. There are many evacuees who have not yet established the connection with their current community necessary for successful settlement.

<u>Other Comments</u>.
Paragraph VI.B. requests sufficient documentation including a copy of the lease; we suggest this be changed to a "lease abstract" to reflect CLC's present practice.

Paragraph VI.D.1. indicates that each jurisdiction is to send a letter to notice the evacuee of their eligibility for the program. Yesterday, we were advised that Director Paulison had approved new notices going to evacuees. It seems that FEMA could supply that 403 eligibility notice to the same time as they supply the evacuee with a letter explaining their 408 ineligibility.


We look forward to continuing to work with you in the implementation of this Special Interim Sheltering Program. If you have any questions, please call me at 713-437-6745.

December 20, 2006 page 4
Mr. Butch Smith

          Sincerely,

          Robert R. Johnson
          Program Manager
          Joint Hurricane Housing Task Force
          Sr. Assistant City Attorney
          Legal Department

c:    James A. Walke, Chief, Public Assistance, FEMA
      Philip Parks, Senior FEMA Official Houston
      Mark Brooks, Senior Counsel, FEMA
      Jack Colley, State Coordinator, Governor's Division of Emergency Mgmt.
      Frank Cantu, Assn't State Coordinator, Governor's Division of Emergency Mgmt
      Paul Hilgers, Director, Neighborhood Housing & Community Dev., City of Austin
      Willette Carter, Dept. of Community Initiatives, City of San Antonio
      Genevieve Burtchell, Director, Ark-Tex Council of Governments
      Robert Doggett, Texas Rio Grande Legal Aide
      Andy Teas, Vice President Public Affairs, Houston Apartment Association
      Kyle Rogg, Sr. Vice President, Corporate Lodging Consultants
      Michael Moore, Mayor's Chief of Staff
      Ann Travis, Director, Government Relations
      Buddy Grantham, Joint Hurricane Housing Task Force